# United States Court of Appeals for the Federal Circuit

---

FUSONG JINLONG WOODEN GROUP CO., LTD.,
FUSONG QIANQIU WOODEN PRODUCT CO., LTD.,
DALIAN QIANQIU WOODEN PRODUCT CO., LTD.,
YIHUA LIFESTYLE TECHNOLOGY CO., LTD., HUZHOU
CHENGHANG WOOD CO., LTD., HANGZHOU HANJE
TEC CO., LTD., HUNCHUN XINGJIA WOODEN
FLOORING INC., DUNHUA SHENGDA WOOD
INDUSTRY CO., LTD., ZHEJIANG FUERJIA WOODEN
CO., LTD., A&W (SHANGHAI) WOODS CO., LTD., DUN
HUA SEN TAI WOOD CO., LTD., ZHEJIANG
DADONGWU GREENHOME WOOD CO., LTD., SINO-
MAPLE (JIANGSU) CO., LTD., JILIN FOREST
INDUSTRY JINQIAO FLOORING GROUP CO., LTD.,
BAISHAN HUAFENG WOODEN PRODUCT CO., LTD.,
METROPOLITAN HARDWOOD FLOORS, INC.,
NAKAHIRO JYOU SEI FURNITURE (DALIAN) CO.,
LTD., SHENYANG HAOBAINIAN WOODEN CO., LTD.,
COHESION TRADING LTD., MGI INTERNATIONAL,
MOBETTA TRADING LTD., LINYI ANYING WOOD CO.,
LTD., LINYI YOUYOU WOOD CO., LTD., SCHOLAR
HOME (SHANGHAI) NEW MATERIAL CO., LTD.,
LUMBER LIQUIDATORS SERVICES, LLC, BENXI
WOOD COMPANY, DALIAN JIAHONG WOOD
INDUSTRY CO., LTD., DALIAN KEMIAN WOOD
INDUSTRY CO., LTD., DONGTAI FUAN UNIVERSAL
DYNAMICS, LLC, HAILIN LINJING WOODEN
PRODUCTS CO., LTD., JIANGSU GUYU
INTERNATIONAL TRADING CO., LTD., JIANGSU
MINGLE FLOORING CO., LTD., JIANGSU SIMBA
FLOORING CO., LTD., JIASHAN HUIJIALE
DECORATION MATERIAL CO., LTD., KEMIAN WOOD
INDUSTRY (KUNSHAN) CO., LTD., SUZHOU DONGDA
WOOD CO., LTD., TONGXIANG JISHENG IMPORT AND
EXPORT CO., LTD., BENXI WOOD, ET AL.,

*Plaintiffs*

GALLEHER CORP., GALLEHER, LLC, WEGO
INTERNATIONAL FLOORS LLC, STRUXTUR, INC.,
EVOLUTIONS FLOORING, INC.,

*Plaintiffs-Appellants*

**v.**

**UNITED STATES, AMERICAN MANUFACTURERS OF
MULTILAYERED WOOD FLOORING,**
*Defendants-Appellees*

———————————

2025-1196, 2025-1232

———————————

Appeals from the United States Court of International Trade
in No. 1:19-cv-00144-RKE, Senior Judge Richard K. Eaton.

———————————

**OPENING BRIEF OF GALLEHER CORP., GALLEHER, LLC,
WEGO INTERNATIONAL FLOORS LLC**

Lizbeth R. Levinson, Esq.
Brittney R. Powell, Esq.

FOX ROTHSCHILD LLP
2020 K Street NW, Suite 500
Washington, DC 20006
Tel: 202- 461-3100

*Counsel to Plaintiff-Appellants
Galleher LLC, Galleher
Corporation, and Wego
International Floors LLC*

January 31, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---:|:---|
| **Case Number** | 25-1196 |
| **Short Case Caption** | Fusong Jinlong Wooden Group Co., Ltd. v. US |
| **Filing Party/Entity** | Wego International Floors LLC, Galleher Corp., and Galleher, LLC Plaintiff-Appellant |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/31/2025

Signature: /s/ Lizbeth R. Levinson

Name: Lizbeth R. Levinson

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Wego International Floors LLC | | Wego Chemical Group Inc. |
| Galleher Corp. | | Artivo Surfaces; Transom Capital Group LLC (Both are parent companies of Galleher Corp.) |
| Galleher, LLC | | Artivo Surfaces; Transom Capital Group LLC (Both are parent comanies of Galleher LLC) |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑  None/Not Applicable ☐  Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below) ☑  No ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable ☐  Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

Page

STATEMENT OF RELATED CASE ....................................................................1

JURISDICTIONAL STATEMENT .......................................................................1

STATEMENT OF THE ISSUE..............................................................................2

STATEMENT OF THE CASE................................................................................2

I.      Nature of the Case ........................................................................................2

II.     Legal and Regulatory Framework ................................................................3

III.    Statement of Facts.........................................................................................5

        A.      Underlying Administrative Review ....................................................5

        B.      Proceedings Before the CIT ...............................................................7

SUMMARY OF THE ARGUMENT .....................................................................9

STANDARD OF REVIEW ..................................................................................11

ARGUMENT ........................................................................................................12

I.      Calculation of a Separate Rate Based on Sino-Maple's AFA Rate Was
        Unreasonable ...............................................................................................12

II.     Historic Dumping Rates Indicate that the Separate Rate is Not
        Reasonably Reflective of the Separate Rate Companies' Potential
        Dumping Margin ..........................................................................................18

CONCLUSION .....................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albermarle Corp. v. United States*,
   821 F.3d 1345 (Fed. Cir. 2016) .......................................................................4

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1556 (Fed. Cir. 1984) .....................................................................12

*Baroque Timber Industries (Zhongshan) Co., Ltd. v. United States*,
   971 F. Supp. 2d 1333 (Ct. Int'l Trade March 31, 2014)...................................18

*Bosun Tools Co., Ltd. v. United States*,
   Ct. No. 2021-1929, 2022 WL 94172 .........................................................*passim*

*Burlington Truck Lines, Inc. v. United States*,
   371 U.S. 156 (1962)........................................................................................11

*Changzhou Hawd Flooring Co. v. United States*,
   324 F. Supp. 3d 1317 (Ct. Int'l Trade March 31, 2014)........................18, 19, 20

*Changzhou Hawd Flooring Co. v. United States*,
   848 F.3d 1006 (Fed. Cir. February 15, 2017)......................................15, 16, 18

*Consol. Edison Co .of New York v. NLRB*,
   305 U.S. 197 (1951)........................................................................................11

*De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*,
   216 F.3d 1027 (Fed. Cir. June 16, 2000) ........................................................16

*Fusong Jinlong Wooden Group Co., Ltd. ET AL. v. United States*, Ct.
   No. 19-00144 (Ct. Int'l Trade 2022) ..........................................................*passim*

*Inland Steel Indus., Inc. v. United States*,
   188 F.3d 1349 (Fed. Cir. 1999) .....................................................................11

*Jiangsu Senmao Bamboo and Wood Industry Co., Ltd., et al., v.
   United States*,
   322 F. Supp. 3d 1308 (Ct. Int'l Trade December 10, 2020)..............................19

*Jilin Forest Indus. Jinqiao Flooring Grp. Co., Ltd. v. United States*,
    519 F. Supp. 3d 1224 (Ct. Int'l Trade 2021) ......................................................22

*Jilin Forest Indus. Jinqiao Flooring Grp. Co., Ltd. v. United States*,
    617 F. Supp. 3d 1343 (Ct. Int'l Trade 2023) ......................................................22

*PAM, S.p.A. v. United States*,
    582 F.3d 1336 (Fed. Cir. 2009) ...........................................................................11

*Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v.*
    *United States*,
    268 F.3d 1376 (Fed. Cir. October 12, 2001) ......................................................13

*Sigma Corp. v. United States*,
    117 F.3d 1401 (Fed. Cir. July 7, 1997) .................................................................3

*Sunpreme Inc. v. United States*,
    946 F.3d 1300 (Fed. Cir. 2020) ...........................................................................11

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
    716 F.3d 1370 (Fed. Cir. May 20, 2013) .....................................................*passim*

*Zhejiang Machinery Import & Export Corp. v. United States*,
    65 F.4th 1364 (Fed. Cir. April 14, 2023) ..............................................................3

**Statutes**

19 U.S.C. § 1516a ........................................................................................................1

19 U.S.C. § 1516a(b)(1)(B) ......................................................................................11

19 U.S.C. § 1673d ...................................................................................................4, 25

19 U.S.C. § 1673d(c)(5) .........................................................................................3, 13

19 U.S.C. § 1673d(c)(5)(A) .........................................................................................3

19 U.S.C. § 1673d(c)(5)(B) ...........................................................................4, 6, 7, 14

28 U.S.C. § 1295(a)(5) .................................................................................................1

28 U.S.C. § 1581(c) ......................................................................................................1

Tariff Act of 1930, 19 U.S.C. § 3512(d).................................................................3, 4

**Other Authorities**

Fed. R. Civ. P. 47.5 ........................................................................................1

H.R. Doc. No. 103-316, Vol. 1 (1994) .............................................................4, 25

*Initiation of Antidumping and Countervailing Duty Administrative
Reviews*, 83 Fed. Reg. 8058 (February 23, 2018).................................5

*Multilayered Wood Flooring from the People's Republic of China:
Amended Final Results of Antidumping Duty Administrative
Review, 2011-2012*, 79 Fed. Reg. 35314 (June 20, 2014)............................18, 19

*Multilayered Wood Flooring from the People's Republic of China:
Amended Final Results of Antidumping Duty Administrative
Review, 2012-2013*, 80 Fed. Reg. 41,476 (July 15, 2015) ....................19, 23, 24

*Multilayered Wood Flooring from the People's Republic of China:
Amended Final Results of Antidumping Duty Administrative
Review, 2013-2014*, 81 Fed. Reg. 46,899 (July 19, 2016) .................................20

*Multilayered Wood Flooring from the People's Republic of China:
Amended Final Results of Antidumping Duty Administrative
Review, 2014-2015,* 82 Fed. Reg. 25,766 (June 5, 2017)......................10, 21, 24

*Multilayered Wood Flooring from the People's Republic of China:
Amended Final Results of Antidumping Duty Administrative
Review, 2015-2016,* 83 Fed. Reg. 35,461 (July 26, 2018) ...............21, 22, 23, 24

*Multilayered Wood Flooring from the People 's Republic of China:
Final Determination of Sales at Less Than Fair Value,* 76 Fed.
Reg. 64318 (October 11, 2011) ........................................................................18

*Multilayered Wood Flooring from the People's Republic of China:
Final Results of Antidumping Duty Administrative Review, Final
Determination of No Shipments, and Partial Rescission; 2016-
2017*, 84 Fed. Reg. 35,461 (July 26, 2018) ........................................................2

*Multilayered Wood Flooring from the People's Republic of China: Notice of Court Decision Not in Harmony with Final Results of Antidumping Duty Administrative Review; Notice of Amended Final Results*, 87 Fed. Reg. 10,733 (February 24, 2022) ...................................19

*Multilayered Wood Flooring from the People's Republic of China: Notice of Court Decision Not in Harmony with the Final Results of the Second Antidumping Duty Administrative Review*, 85 Fed. Reg. 83,888 (December 23, 2020) ...........................................................................20

*Multilayered Wood Flooring from the People's Republic of China: Notice of Court Decision Not in Harmony with the Final Results of the Second Antidumping Duty Administrative Review*, 86 Fed. Reg. 14,724 (March 18, 2021) ...................................................................20

*Multilayered Wood Flooring from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, 2016-2017*, 83 Fed. Reg. 65630 (December 21, 2018) ...................................5, 6

## STATEMENT OF RELATED CASE

Pursuant to Rule 47.5, Plaintiff-Appellants' counsel states that she is unaware of any other appeal in or from this action that previously was before this Court or any other appellate court under the same or similar titles. Plaintiff-Appellants' counsel is also unaware of any cases currently pending before this Court or any other court, other than the member case to this appeal under case number 25-1232, that may directly affect or be directly affected by the Court's decision in this case.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1295(a)(5), as an appeal from the U.S. Court of International Trade ("CIT" or trial court). The CIT had jurisdiction under 28 U.S.C. § 1581(c), as the underlying action involved a final determination by the Department of Commerce ("Commerce") under 19 U.S.C. § 1516a.

The CIT entered final judgment on September 18, 2024, in *Fusong Jinlong Wooden Group Co., Ltd. v. United States*, Slip Opinion 24-103. Plaintiff-Appellants Wego International Floors, LLC, Galleher Corporation, Galleher, LLC (collectively "Plaintiff-Appellants") filed their notice of appeal on November 12, 2024. Therefore, this appeal is timely, as it was filed within 60 days of the lower court's final judgment.

## STATEMENT OF THE ISSUE

Whether the Department of Commerce's calculation of the margin applicable to separate rate companies based on the weighted average of a total AFA rate and a 0% rate was supported by substantial evidence or otherwise in accordance with law.

## STATEMENT OF THE CASE

### I.    Nature of the Case

This appeal concerns the final results of the sixth administrative review of the antidumping duty order of multilayered wood flooring products from the People's Republic of China, covering the period of review December 1, 2015, through November 30, 2017. *See Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Rescission; 2016-2017*, 84 Fed. Reg. 35,461 (July 26, 2018) and accompanying Issues and Decision Memorandum ("Final Results") Appx150-218.  The Plaintiff-Appellants appeal the final judgment of the CIT in *Fusong Jinlong Wooden Group Co., Ltd. v. United States*, Ct. No. 19-00144, Slip Op. 24-103 (Ct. Int'l Trade September 18, 2024), Appx1-13 based on Commerce's unreasonable inclusion of an AFA rate in the calculation of the separate rate for non-individually examined respondents.

2

## II.   Legal and Regulatory Framework

In proceedings involving non-market economies ("NMEs"), like the People's Republic of China, Commerce maintains a rebuttable presumption that all companies within that country are subject to government control and should be assessed a single weighted average dumping margin.  Commerce's policy is to assign non-investigated respondents that singled weighted average dumping margin unless they can affirmatively demonstrate the absence of government control.  *See, e.g., Zhejiang Machinery Import & Export Corp. v. United States,* 65 F.4th 1364, 1371 (Fed. Cir. April 14, 2023) (*citing Sigma Corp. v. United States*, 117 F.3d 1401, 1405-1406 (Fed. Cir. July 7, 1997).  If the non-investigated respondent can demonstrate the absence of government control, Commerce will assign them a separate rate, which is a rate calculated in the proceeding based on the rates of the mandatory respondents.  *Id*.

The Tariff Act of 1930 ("the Act") does not establish any particular methodology that Commerce must use to calculate the separate rate.  *See Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1374 (Fed. Cir. May 20, 2013) ("*Bestpak*").  Commerce generally calculates the separate rate in NME investigations using the same method prescribed in 19 U.S.C. § 1673d(c)(5) for the calculation of the all-others rate (*i.e.* the rate assigned to non-individually examined respondents) in market economy investigations.  *See id*. at 1373.

3

Pursuant to 19 U.S.C. § 1673d(c)(5)(A), Commerce calculates the all-others rate by taking the weighted average of the dumping margins assigned to the mandatory respondents, excluding any margins that are zero, de minimis, or determined entirely on the basis of facts available. If all margins of the mandatory respondents are zero, de minimis, or determined based entirely on facts available, Commerce may use any reasonable method to calculate the all-others rate "including averaging the estimated weighted average dumping margins determined for exporters and producers individually investigated." 19 U.S.C. § 1673d(c)(5)(B). The calculation of the separate rate based on the weighted average of the mandatory respondents' margins is commonly referred to as the "expected method." *See Bestpak*, 716 F.3d at 1374.

The Statement of Administrative Action ("SAA") provides further clarification of 19 U.S.C. § 1673d. The SAA accompanied the 1995 amendments to the dumping statute and was recognized by Congress as an authoritative expression concerning the interpretation and of the Tariff Act under 19 U.S.C. § 3512(d). *See Albermarle Corp. v. United States*, 821 F.3d 1345, 1351 (Fed. Cir. 2016). The SAA states that if the expected method under 19 U.S.C. § 1673d is "not feasible or it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce

may use other reasonable methods." H.R. Doc. No. 103-316, Vol. 1 at page 873 (1994).

### III. <u>Statement of Facts</u>

#### A. Underlying Administrative Review

On February 23, 2018, Commerce initiated the sixth administrative review of the antidumping duty order for multilayered wood flooring from the People's Republic of China, covering the period December 1, 2016 through November 30, 2017. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 83 Fed. Reg. 8058 (February 23, 2018), Appx261-272. On June 19, 2018, Commerce selected Jiangsu Senmao Bamboo and Wood Products Co., Ltd. ("Jiangsu Senmao") as a mandatory respondent in the administrative review. *Respondent Selection Memo*; Appx539-548. Sino-Maple (Jiangsu) Co., Ltd. ("Sino-Maple") was later selected as a mandatory respondent on July 30, 2018 in the administrative review. *Respondent Selection Memo*; Appx550-552.

Over fifty exporters participated in the underlying administrative review as separate rate respondents, including the producers of merchandise imported by Plaintiff-Appellants. *Final Results,* Appx178. Each of the fifty exporters submitted a separate rate certification ("SRC") or Separate Rate Application ("SRA") to establish that it was entitled to separate rate status in the administrative review. *Id.; see, e.g.*, *Fusong Jinlong Separate Rate Application*, Appx352-508.

Commerce published the preliminary results of the administrative review on January 31, 2019. *Multilayered Wood Flooring from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review; 2016-2017,* 83 Fed. Reg. 65630 (December 21, 2018) ("Preliminary Results"), Appx220-224. In the Preliminary Results, Commerce assigned Jiangsu Senmao, one of the mandatory respondents, a weighted-average dumping margin of zero percent. *Id.* Though the other mandatory respondent, Sino-Maple, participated in the administrative review, Commerce determined that its responses were deficient, and assigned the company a preliminary margin of 96.51% based upon total adverse facts available ("AFA"), applying the China-wide rate. *Id.* Commerce then calculated the separate rate by taking the simple average of the two mandatory respondents' margins. *Id.* at Appx221. Its calculation resulted in a preliminary margin of 48.26% for the separate rate companies. *Id.* at Appx222.

On March 4, 2019, certain separate rate companies and the Plaintiff-Appellants filed an administrative case brief to contest Commerce's calculation of the separate company rate. *Plaintiff-Appellant Administrative Case Brief,* Appx274-290. Plaintiff-Appellants argued that incorporating an AFA margin in the calculation of the separate company rate and applying that rate to fully cooperative separate rate companies was not a reasonable methodology within the meaning of 19 U.S.C. § 1673d(c)(5)(B). *Id.* at Appx281-283. Further, Plaintiff-

Appellants also argued that the 48.25% separate rate margin was not based on a reasonable methodology under 19 U.S.C. § 1673d(c)(5)(B) because it did not reflect the potential antidumping duty margins for the separate rate companies or the historic dumping margins in prior proceeding segments. *Id*.

On August 5, 2019, Commerce published the final results of the administrative review in the Federal Register. In its final results, Commerce continued to assign a margin of zero percent to Senmao, but adjusted Sino-Maple's AFA margin to 85.13%. *Final Results*, Appx152-154. Commerce also continued to calculate the separate company rate by averaging the zero and total AFA margin, resulting in a separate rate margin of 42.57%. *Id*.

### B. Proceedings Before the CIT

Plaintiff-Appellants, among other parties, challenged Commerce's incorporation of Sino-Maple's AFA rate in the calculation of the rate for separate rate companies in the CIT. *Plaintiff-Appellants' CIT Brief,* Appx126-148. Plaintiff-Appellants argued, as they did before Commerce, that the inclusion of Sino-Maple's AFA rate in the calculation of the separate rate was unreasonable and unsupported by substantial evidence because it did not reflect the potential dumping margins of the separate rate companies. *See id*.

The CIT remanded the determination to Commerce several times throughout the proceedings. The CIT first remanded the determination to Commerce to

167629538.1

reconsider the method it employed to assign Sino-Maple's AFA rate. *Fusong Jinlong Wooden Group Co., Ltd. Et. Al. v. United States*, Ct. No. 19-00144, Slip Op. 22-155 (Ct. Int'l Trade December 22, 2022), Appx71-119. The Defendant-Appellee filed a motion for reconsideration concerning its remand decision on January 23, 2023. Appx55-69. The CIT granted the motion on October 4, 2023, revising its opinion and order to reflect that Commerce lawfully assigned Sino-Maple's AFA rate. *See Fusong Jinlong Wooden Group Co., Ltd. Et. Al. v. United States*, Ct. No. 19-00144, Slip Op. 23-145 (Ct. Int'l Trade October 4, 2023), Appx44-45.

On March 11, 2024, the CIT remanded the determination to Commerce based on Commerce's methodology for calculating the separate rate. *Fusong Jinlong Wooden Group Co., Ltd. Et. Al. v. United States*, Ct. No. 19-00144, Slip Op. 24-29 (Ct. Int'l Trade March 11, 2024), Appx24-42. The CIT found a remand was warranted because Commerce failed to explain why it calculated the separate rate by taking a simple average of Sino-Maple's and Jiangsu Senmao's antidumping margins instead of taking the weighted average, as prescribed by the expected method. *Id.* The CIT noted that it reserved the right to make a decision on other issues relating to the separate rate calculation, including whether the use of Sino-Maple's AFA rate in the calculation resulted in an aberrational rate that

8

was not reflective of the Separate Rate Companies' potential dumping margins. *Id.* at 41-42.

In its final remand results issued on June 7, 2024, Commerce recalculated the separate rate by taking a weighted average of Sino-Maple's and Jiangsu Senmao's antidumping rates. Final Remand Results, Appx15-21. The change in the calculation methodology resulted in a separate rate of 31.63%, rather than the 48.26% separate rate previously found by Commerce. *Id.* The Court upheld Commerce's remand results on September 18, 2024, finding that Commerce had used the expected method as instructed. CIT's Final Opinion, Appx12. The Court noted that the issues it had reserved decision on, including the inclusion of Sino-Maple's AFA rate in the calculation of the separate rate, was rendered moot by Commerce's Final Remand Results without further explanation. Appx8. Plaintiff-Appellants subsequently filed this appeal on November 12, 2024.

## SUMMARY OF THE ARGUMENT

This Court should reverse the trial court's holding that Commerce's calculation of the separate rate using the weighted average of a *de minimis* margin and an AFA margin was reasonable and supported by substantial evidence. CIT's Final Opinion, Appx8. Commerce has an obligation to calculate a separate rate in a way that reasonably reflects the potential dumping margins of the separate rate companies. *See Bestpak*, 716 F.3d at 1374. Commerce's inclusion of Sino-

9

Maple's AFA rate in the separate rate calculation distorted the separate rate margin adversely due to the high rate assigned to this companybecause of its lack of cooperation. The use of Sino-Maple's AFA rate not only punishes the separate rate companies for Sino-Maple's lack of cooperation, but also results in an aberrational margin that does not bear any relationship to the actual dumping margins of the separate rate companies. *Id*. at 1380.

The historic margins in all proceeding segments prior to the sixth administrative review further indicate the unreasonable nature of Commerce's calculation methodology. In all but one proceeding segment, Commerce assigned either *de minimis* or zero margins to all separate rate companies and mandatory respondents. *See, e.g. Multilayered Wood Flooring from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2014-2015,* 82 Fed. Reg. 25,766 (June 5, 2017). The historic margins in this proceeding distinguish it from this Court's findings in *Bosun Tools Co., Ltd. v. United States*, Ct. No. 2021-1929, 2022 WL 94172 (Fed. Cir. 2022). In that proceeding, this Court found that prior dumping margins supported Commerce's inclusion of an AFA rate in the calculation of the separate rate because respondents were historically assigned higher than *de minimis* rates, respondents' rates were following an upward trend, and the rate calculated in the preceding administrative review was similar to that calculated with the AFA rate. *Id*. at *5.

10

The historic dumping margins for this proceeding, by contrast, were consistently zero or *de minimis* in all prior proceeding segments. There was no upward trend in the assigned margins, or even a margin above 5% prior to the sixth administrative review. The historic dumping margins in this proceeding show that the separate rate assigned in sixth administrative review is highly irregular and does not reflect the actual or potential dumping margins of the separate rate companies. Instead, the historic dumping margins support that the separate rate companies are more aligned to the zero percent margin calculated for Jiangsu Senmao and not the AFA rate assigned to Sino-Maple.

The distortion caused by Sino-Maple's AFA rate ultimately renders Commerce's calculation methodology unreasonable, and Commerce should recalculate the separate rate using a reasonable alternative method. Thus, this Court should reverse the trial Court and remand the determination to Commerce to recalculate the separate rate based on a reasonable alternative method which reflects the historic data more than a single company's AFA rate.

## STANDARD OF REVIEW

When reviewing the judgment of the CIT concerning a final determination by Commerce, the Court applies the CIT's standard of review. *Sunpreme Inc. v. United States,* 946 F.3d 1300, 1308 (Fed. Cir. 2020). This Court's reviews agency action on a *de novo* basis and does not merely review the adequacy of the CIT's

decision. *Id.* Therefore, this Court is able to invalidate determinations, findings, or conclusions of Commerce that were "unsupported by substantial evidence on the record, or otherwise not in accordance with law." See 19 U.S.C. § 1516a(b)(1)(B).

Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009), *quoting Consol. Edison Co .of New York v. NLRB*, 305 U.S. 197, 229 (1951). In order for a determination to satisfy this standard, "{t}here must be a rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 158 (1962). The Court is not to reweigh the evidence or substitute its judgment for that of Commerce. *Inland Steel Indus., Inc. v. United States*, 188 F.3d 1349, 1359 (Fed. Cir. 1999). Judicial review of agency action must be based on the record as a whole, and the Court must take into account "whatever in the record fairly detracts from its weight." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

## ARGUMENT

### I.  Calculation of a Separate Rate Based on Sino-Maple's AFA Rate Was Unreasonable

One of the primary bases for the Plaintiff-Appellants' appeal to the CIT of Commerce's determination in the sixth administrative review of *Multilayered*

*Wood Flooring from the People's Republic of China,* was the use of Sino-Maple's AFA rate in the calculation of the separate rate. *Plaintiff-Appellants' CIT Case Brief,* Appx126-148. In its final decision, the CIT failed to address Commerce's inclusion of Sino-Maple's AFA rate in the calculation of the separate rate. Appx12. Instead, the Court upheld Commerce's Final Remand Results, which based the calculation of the separate rate on the weighted average of the mandatory respondents' margins, rather than the simple average Commerce had previously utilized. *Fusong Jinlong Wooden Group Co., Ltd. Et. Al. v. United States*, Ct. No. 19-00144, Appx2-9; *see also* Final Remand Results Appx15-21. The change in the calculation methodology from a simple average to a weighted average, however, does not solve the fundamental flaw with Commerce's final determination.

Commerce's inclusion of Sino-Maple's AFA rate in its calculation of the separate rate resulted in an aberrational separate company rate of 31.63%. Final Remand Results, Appx15-21. Commerce is obligated to employ methodologies to calculate margins as accurately as possible. *Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States,* 268 F.3d 1376, 1382 (Fed. Cir. October 12, 2001). Commerce's calculation is not reasonable simply because it relied on the expected method prescribed under 19 U.S.C. § 1673d(c)(5). Indeed, the legislative history expressly provides that "Commerce may use other reasonable methods" when the expected method "would not be reasonably

167629538.1

reflective of potential margins for" the separate rate companies.  SAA, *supra* at

873.  In the final remand results, Commerce's separate rate of 31.63% does not

reasonably reflect the potential antidumping margins of the separate rate

companies.

This Court has specifically found in prior cases that the inclusion of an AFA

rate when using the expected method to calculate the separate company rate may

be unreasonable.  *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d

1370, 1374 (Fed. Cir. May 20, 2013) ("*Bestpak*").  In *Bestpak*, this Court addressed

the inclusion of an AFA rate in the calculation of a separate rate that was

ultimately applied to cooperating companies.  *Bestpak*, 716 F.3d at 1370.

Commerce's final determination in the underlying investigation averaged the *de*

*minimis* margin of one mandatory respondent with the second mandatory

respondent's AFA margin of 247.65%, to establish a separate company rate of

123.83%.  *Id*. at 1375.

Though this Court determined in *Bestpak* that the expected method was a

permissible methodology under the statute, it found that the inclusion of the AFA

margin in the calculation of the separate company rate was unreasonable under 19

U.S.C. § 1673d(c)(5)(B).  *Id.* at 1378-1379.  This Court noted that the 123.83%

rate assigned to Bestpak was "far in excess of the *de minimis* rate assigned to the

only cooperating non-government controlled" mandatory respondent.  *Id*. at 1379.

14

Ultimately, this Court rejected the application of the 123.83% average margin to the separate rate companies because the averaged margin did not reasonably reflect their potential dumping margins. *Id*. at 1378-1380. It found that "rate determinations for nonmandatory, cooperating separate rate respondents must also bear some relationship to their actual dumping margins." *Id*. at 1380.

Commerce's calculations in its Final Remand Results employ the same flawed methodology that this Court addressed in *Bestpak*. In its Final Determination, Commerce calculated a margin for only one mandatory respondent, Jiangsu Senmao, and found that its antidumping rate for the period of review was 0%. Final Results, Appx150-153. By contrast, Commerce assigned an AFA rate of 85.13%, based on the China-wide rate, to Sino-Maple because it failed to cooperate with Commerce's review. *Id*. In its Final Remand Results, Commerce continued to include Sino-Maple's AFA margin in its calculation of the separate rate. Appx15-21. The inclusion of the AFA margin in the calculation resulted in a separate rate of 31.63%, a margin that was 31 percentage points higher than the margin calculated for the only cooperative mandatory respondent, Jiangsu Senmao. *Id*.

Commerce's inclusion of the AFA rate in its separate rate calculation contrasts greatly with its other findings in the administrative review. Commerce found that each of the separate rate companies fully cooperated with the

administrative review and operated free of government control.  *See Preliminary Determination Memorandum*, Appx234-241.  Jiangsu Senmao was the only mandatory respondent that similarly cooperated with Commerce's administrative review, and it received a calculated margin of 0%.  Final Results, Appx150-153.  Since Jiangsu Senmao and the separate rate companies were fully cooperative with Commerce's review and Commerce found none of them to be government controlled, Jiangsu Senmao's zero margin bears "some relationship to [ the ] actual dumping margins of the separate rate companies," unlike the AFA margin assigned to Sino-Maple.  *Bestpak*, 716 F.3d at 1380.

Despite the separate rate companies' cooperation and lack of government control, Commerce tainted its separate rate calculation by including the AFA rate of a non-cooperative mandatory respondent.  By including Sino-Maple's AFA rate in the calculation of the separate rate, Commerce effectively extended the consequences of Sino-Maple's non-cooperation to the separate rate companies.  Such a decision is not reasonable.  In *Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006 (Fed. Cir. February 15, 2017) ("*Changzhou II*"), Commerce calculated the separate rate by averaging the zero margins of the mandatory respondent with the China-wide rate.  *Id*. at 1010.  This Court found that it was unlawful for Commerce to infer any adverse inference derived from the China-

16

wide/total AFA rate to fully cooperative separate rate companies. *Id*. at 1012-1013.

The incorporation of the 85.13% China-wide/AFA margin into the calculation of the separate rate was unreasonable. Commerce's inclusion of Sino-Maple's AFA rate in the separate rate calculation essentially assigned an adverse inference to the separate rate companies, as if they were controlled by the Chinese government or otherwise non-cooperative with Commerce's review. The application of such an inference to fully cooperative separate rate respondents resulted in a separate rate that does not reasonably reflect their potential dumping margins. Congress simply could not have "intended for Commerce's discretion to include the ability to select unreasonably high rates with no relationship to the respondent's actual dumping margin" as it did in this case. *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. June 16, 2000).

Under the circumstances of this case, application of the expected methodology resulted in a strikingly high and unduly punitive margin for the fully cooperative separate rate companies, due to the inclusion of Sino-Maple's AFA margin. The CIT should not have upheld Commerce's clearly distorted calculation. Instead, pursuant to the statute, the Court's holding in *Bestpak*, and

167629538.1

the SAA, the CIT should have remanded the determination to Commerce to recalculate the separate rate with an alternative reasonable methodology.

## II.    Historic Dumping Rates Indicate that the Separate Rate is Not Reasonably Reflective of the Separate Rate Companies' Potential Dumping Margin

To justify its inclusion of Sino-Maple's AFA rate in the calculation of the separate rate, Commerce noted in its final results that the "separate rate has in fact changed from segment to segment, and the separate rate companies have not had consistent low margins for each review." Final Results, Appx181-182. Commerce's statement is wholly inaccurate and is unsupported by either substantial evidence or the historical record of the proceeding. Commerce's determination to include Sino-Maple's AFA rate is even more unreasonable considering the historic dumping rates calculated in the initial antidumping investigation and the first through fifth administrative reviews proceedings.

In the initial investigation of *Multilayered Wood Flooring from the People's Republic of China*, Commerce found the following margins for the three mandatory respondents and the separate rate companies:

1. The Samling Group ("Samling"): 2.63%

2. Zhejiang Lavo Wood Industry Co., Ltd. ("Lavo"): 3.97%

3. Zhejiang Yuhua Timber Co., Ltd. ("Yuhua"): 0.00%

4. Separate Company Rate: 3.30%

18

*Multilayered Wood Flooring from the People's Republic of China: Final Determination of Sales at Less Than Fair Value,* 76 Fed. Reg. 64318 (October 11, 2011). Based on the initial results of the investigation, Yuhua was excluded from the order due to its zero percent margin. Following litigation, the antidumping duty margins for the two other mandatory respondents were reduced to zero or *de minimis. Baroque Timber Industries (Zhongshan) Co., Ltd. v. United States*, 971 F. Supp. 2d 1333 (Ct. Int'l Trade March 31, 2014). Once the litigation concluded and all three mandatory respondents received zero margins, the Court subsequently affirmed Commerce's remand determination that assigned a zero margin to the separate rate companies. *Changzhou Hawd Flooring Co. v. United States*, 324 F. Supp. 3d 1317 (Ct. Int'l Trade March 31, 2014) ("*Changzhou I*").[1]

In the first administrative review, Commerce selected three new mandatory respondents. In the final results of that administrative review, two of the three mandatory respondents received *de minimis* antidumping duty margins. *Multilayered Wood Flooring from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2011-2012*, 79 Fed. Reg. 35314 (June 20, 2014). The third mandatory respondent, Fine Furniture, received a margin of 5.92 percent, which was also assigned to the separate rate respondents.

---

[1]    The Court's decision was affirmed by this Court in *Changzhou II,* 848 F.3d 1006.

*Id.* Following litigation in *Changzhou I and II*, Fine Furniture was excluded from the antidumping duty order *ab initio*. *Changzhou I,* 324 F. Supp. 3d at 1327-1328. Pursuant to the Court's orders, Commerce issued a *Federal Register* notice on February 24, 2022 announcing that the average dumping margin for Fine Furniture and the separate rate companies for the first administrative review was amended to 0%. *Multilayered Wood Flooring from the People's Republic of China: Notice of Court Decision Not in Harmony with Final Results of Antidumping Duty Administrative Review; Notice of Amended Final Results*, 87 Fed. Reg. 10,733 (February 24, 2022). Thus, all mandatory respondents and separate rate companies were ultimately assigned an antidumping duty margin of zero in Commerce's first administrative review.

In the second administrative review, Commerce selected two mandatory respondents, Jiangsu Senmao and Dalian Daejin Wood Co., Ltd. ("Dalian"). *Multilayered Wood Flooring from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2012-2013*, 80 Fed. Reg. 41,476 (July 15, 2015). In the Final Results, Dalian received a zero margin while Jiangsu Senmao received a margin of 13.74%, which was likewise assigned to the separate rate companies. *Id.* As in prior administrative reviews, the rates assigned by Commerce were altered due to litigation. Based on the CIT's findings in *Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. v. United States,* 322 F.

20

Supp. 3d 1308 (Ct. Int'l Trade December 10, 2020), Commerce calculated a new rate of 3.92% for Jiangsu Senmao, which it also assigned to the separate rate companies. *Multilayered Wood Flooring from the People's Republic of China: Notice of Court Decision Not in Harmony with the Final Results of the Second Antidumping Duty Administrative Review*, 85 Fed. Reg. 83,888 (December 23, 2020). The second administrative review was the first time any mandatory respondent received higher than a zero percent margin, but the final margin was still less than 5%.

In the third administrative review, Commerce selected Dalian Penghong Floor Products Co., Ltd. ("Dalian Penghong") and Fine Furniture as the mandatory respondents. Commerce assigned Dalian Penghong a margin of zero, and calculated a margin of 17.37% for Fine Furniture. *Multilayered Wood Flooring from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2013-2014*, 81 Fed. Reg. 46,899 (July 19, 2016). Like the first administrative review, Fine Furniture was subsequently excluded from the order based on the Court's findings in *Changzhou I* and *II*. 324 F. Supp. 3d at 1327-1328. Pursuant to the Court's orders, Commerce issued notice on March 18, 2021, that the average dumping margin for Fine Furniture and the separate rate companies during the third administrative review period was amended to zero percent. *Multilayered Wood Flooring from the People's Republic of China: Notice*

21

*of Court Decision Not in Harmony with the Final Results of the Second*

*Antidumping Duty Administrative Review*, 86 Fed. Reg. 14,724 (March 18, 2021).

Commerce selected the same mandatory respondents for the fourth administrative review that it selected for the second, Jiangsu Senmao and Dalian Penghong. Dalian Penghong received a zero margin and Jiangsu Senmao received a *de minimis* margin. *Multilayered Wood Flooring from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2014-2015,* 82 Fed. Reg. 25,766 (June 5, 2017). Consequently, the separate rate margin was also zero percent. *Id.*

Finally, in the fifth administrative review, Commerce again selected Dalian Penhong and Jiangsu Senmao as the two mandatory respondents. Commerce calculated a zero margin for Dalian Penhong and a *de minimis* margin for Jiangsu Senmao. *Multilayered Wood Flooring from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2015-2016,* 83 Fed. Reg. 35,461 (July 26, 2018). Consequently, all separate rate companies received a separate rate equal to zero percent, which was not appealed. *Id.* Commerce also determined that Jilin Forest Industry Jinqiao Flooring Group Co.

Ltd. ("Jilin Forest") was not eligible for a separate company rate and thereby treated it as part of the China-wide entity.  *Id.* [2]

In short, in almost all of the administrative reviews preceding the sixth administrative review, the mandatory respondents and separate rate companies received margins of zero percent.  The sixth administrative review is the first in which the separate rate companies received a margin over 4%.  Thus, the historic data clearly indicates that the separate rate of 31.63% is highly aberrational margin for this proceeding.

In *Bosun Tools Co., Ltd. v. United States*, Ct. No. 2021-1929, 2022 WL 94172 (Fed. Cir. 2022) ("*Bosun Tools*"), this Court found that historic dumping margins can indicate whether Commerce's application of the expected method was reasonable.  In that case, Commerce similarly calculated the separate rate by taking the average of one mandatory respondent's AFA rate and the other mandatory respondent's *de minimis* rate.  *Id.* at *4.  The appellant argued that historic separate rates in the proceeding indicated that it was unreasonable for Commerce to include

---

[2] Jilin Forest did appeal Commerce's decision to treat it as part of the China-wide entity.  The CIT remanded the determination to Commerce and ordered that it calculate a rate for Jilin Forest. *Jilin Forest Indus. Jinqiao Flooring Grp. Co., Ltd. v. United States*, 519 F. Supp. 3d 1224 (Ct. Int'l Trade 2021) ("*Jilin I*"), and *Jilin Forest Indus. Jinqiao Flooring Grp. Co., Ltd. v. United States*, 617 F. Supp. 3d 1343 (Ct. Int'l Trade 2023) ("*Jilin II*").  On remand, Commerce calculated a zero margin for Jilin Forest.  The CIT's decision is currently under appeal before this Court in *Jilin Forest Indus. Jinqiao Flooring Grp. Co., Ltd. v. United States*, Ct. No. 23-2245.

an AFA rate in the calculation of the separate rate, because it resulted in an aberrational margin. *Id*. at *5.

This Court found that the separate rate calculated by Commerce was supported by substantial evidence because: 1) all of the appellant's individually calculated rates were above *de minimis* in prior administrative reviews; 2) in the administrative review prior to the review at issue in the appeal, Commerce had assigned a similar separate rate based on calculated rates that were above *de minimis*; 3) Commerce did not ignore the appellant's prior antidumping rates and instead noted an upward trend in the calculated separate rate across the previous administrative reviews; and 4) the 0% rate proposed by the appellant as an alternative was not realistic given its prior higher rates. *Id*. at *6.

The Court ruled against the appellant in *Bosun Tools* because the historic data simply did not support that Commerce's separate rate was unreasonable or aberrational. *Id*. The case now before this Court is the opposite of *Bosun Tools*. In this case, the margins for the mandatory respondents and the separate rate companies in the investigation and administrative reviews were almost always zero. *See, e.g.*, *Multilayered Wood Flooring from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2015-2016*, 83 Fed. Reg. 35,461. Only in the second administrative review did Commerce previously calculate a non-zero margin for the separate rate companies.

24

*Multilayered Wood Flooring from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2012-2013*, 80 Fed. Reg. 41,476. Yet that margin was a meager 3.92%, a significantly lower margin than the 31.63% margin calculated by Commerce in its sixth administrative review. *Compare id*. *with* Final Remand Results, Appx15-19.

Further, in the two administrative reviews preceding the administrative review at issue in this appeal, Commerce calculated zero margins for the mandatory respondents and separate rate companies. *Multilayered Wood Flooring from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2014-2015,* 82 Fed. Reg. 25,766; *Multilayered Wood Flooring from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2015-2016,* 83 Fed. Reg. 35,461. Commerce's calculations in those administrative reviews contrast greatly with *Bosun Tools*, where Commerce calculated a similar separate rate in the administrative review directly preceding the administrative review under appeal. *Bosun Tools* at *5. The zero margins in the two administrative proceedings prior to the sixth administrative proceeding clearly show that Commerce's inclusion of Sino-Maple's AFA rate created an atypical and aberrational rate.

Though Commerce did discuss the historic dumping margins in its Final Results, it incorrectly stated that the margins had changed from segment to

167629538.1

segment.  Final Results, Appx181-182.   As discussed above, the margins for

mandatory respondents and all separate companies were calculated to be 0% in all

but one administrative review following litigation.  There was no upward trend or

larger than *de minimis* rates as there was in *Bosun Tools*.  *Bosun Tools*, 2022 WL

94172 at *5

　　　When the expected method results in an unreasonable margin, the statute

and legislative history require the implementation of a reasonable, alternative

calculating methodology for the separate company rate.  *See* H.R. Doc. No. 103-

316, Vol. 1 at page 873 (1994); *see also* 19 U.S.C. § 1673d.  It is clear from the

historic data that Commerce's application of the expected method in the sixth

administrative review of *Multilayered Wood Flooring from China* did not reflect

the separate rate companies potential dumping margins.  Instead, the expected

method caused the non-cooperation of a single respondent to taint the separate rate

for the cooperative separate rate companies.  The statute and legislative history

require the use of an alternative method to ensure that the separate rate reflects the

potential dumping margins of the cooperative companies not subject to individual

review.  *See* H.R. Doc. No. 103-316, Vol. 1 at page 873 (1994); *see also* 19 U.S.C.

§ 1673d.  Unlike *Bosun Tools*, the historic data supports a calculated rate of 0% for

the separate rate companies or an alternative calculation methodology that would

reflect the zero margins found by Commerce in almost all other proceeding segments.

## CONCLUSION

For these reasons, we respectfully request that this Court reverse the trial court's holding that the inclusion of Sino-Maples AFA rate in the calculation of the separate rate was supported by substantial evidence in the record. We further request that this Court remand this proceeding to Commerce to calculate the separate rate based on a reasonable methodology that considers the historic dumping margins in all other proceeding segments.

Respectfully submitted,

*/s/ Lizbeth R. Levinson*
Lizbeth R. Levinson
Brittney R. Powell

January 31, 2025       Attorneys for Plaintiff-Appellants Galleher LLC, Galleher Corporation, and Wego International Floors LLC

167629538.1

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  2025-1196, 2025-1232

**Short Case Caption:**  Fusong Jinlong Wooden Group Co., Ltd. v. United States

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  5,771  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/31/2025

Signature:  /s/ Lizbeth R. Levinson

Name:  Lizbeth R. Levinson

Save for Filing