# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———————————

GALLEHER CORP., GALLEHER, LLC, WEGO INTERNATIONAL FLOORS LLC,

Plaintiff-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

———————————

On Appeal from the Court of International Trade in case no. 19-144, Senior Judge Richard K. Eaton.

———————————

## DEFENDANT-APPELLEE'S BRIEF

———————————

*Of Counsel:*

DANIELLE V. COSSEY
  *Attorney*
  *Office of the Chief Counsel for*
  *Trade Enforcement & Compliance*
  *U.S. Department of Commerce*
  *1401 Constitution Ave.*
  *Washington, DC 20230*
  *(202) 597-1029*
  *Danielle.cossey@trade.gov*

BRETT A. SHUMATE
  *Assistant Attorney General*

PATRICIA M. McCARTHY
  *Director*

TARA K. HOGAN
  *Assistant Director*

BRENDAN D. JORDAN
  *Trial Attorney*

  *Attorneys, Commercial Litigation Branch*
  *Civil Division, U.S. Department of Justice*
  *P.O. Box 480, Ben Franklin Station*
  *Washington, DC 20044*
  *(202) 616-0342*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ...........................................................1

STATEMENT OF THE ISSUES ..............................................................1

STATEMENT OF THE CASE ..................................................................2

   I.    Statutory Background ................................................................2

   II.   Commerce's Administrative Review....................................................5

   III.  Proceedings Before the CIT And Remand Proceedings Before
        Commerce ...............................................................................7

SUMMARY OF ARGUMENT ...............................................................14

ARGUMENT ...................................................................................15

   I.    Standard of Review .................................................................15

   II.   Wego and Gallaher Have Waived And Forfeited Any Challenge To The
        31.63 Percent Separate Rate Commerce Calculated On Remand.............16

        A. Wego and Gallaher Have Waived The Arguments They Raise In
           This Appeal .............................................................16

        B. Wego and Gallaher Have Forfeited The Arguments They Raise In
           This Appeal .............................................................21

        C. This Court Should Not Exercise Its Discretion To Consider Wego
           and Gallaher's Forfeited Arguments.....................................22

   III.  Commerce's Calculation Of The Separate Rate On Remand Is
        Supported By Substantial Evidence And In Conformity With Law.........24

        A. Commerce Acted In Accordance With Law And With Substantial
           Evidence When It Calculated A Separate Rate Using Sino-Maple's
           Dumping Margin As An Input Pursuant To The Expected
           Method...................................................................24

    B.  The 31.63 Percent Separate Rate Commerce Calculated Is Not
Aberrational.................................................................................................29

CONCLUSION ............................................................................................32

# TABLE OF AUTHORITIES

**Cases**                                                     **Page(s)**

*Albemarle Corp. & Subsidiaries v. United States,*
821 F.3d 1345 (Fed. Cir. 2016) ................................................................ *passim*

*Amanda Foods (Vietnam) Ltd. v. United States,*
714 F. Supp. 2d 1282 (2010) ........................................................................ 25

*Austin v. Healey,*
5 F.3d 598 (2d Cir. 1993) ............................................................................... 1

*Bosun Tools Co., Ltd. v. United States,*
2022 WL 94172 (Fed. Cir. 2022) ................................................................. 32

*Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta,*
955 F.3d 971 (Fed. Cir. 2020) ..................................................................... 17

*Cemex, S.A. v. United States,*
133 F.3d 897 (Fed. Cir. 1998) ..................................................................... 23

*Changzhou Hawd v. United States,*
848 F.3d 1006 (Fed. Cir. 2017) ....................................................... 25, 26, 29

*Consolo v. Fed. Mar. Comm'n,*
383 U.S. 607 (1966) ..................................................................................... 16

*Dixon v. McDonald,*
815 F.3d 799 (Fed. Cir. 2016) ..................................................................... 17

*Dupont Teijin Films USA, LP v. United States,*
407 F.3d 1211 (Fed. Cir. 2005) ............................................................. 15, 16

*Fresenius USA, Inc. v. Baxter Int'l, Inc.,*
582 F.3d 1288 (Fed. Cir. 2009) ................................................................... 22

*In re Google Tech. Holdings LLC,*
980 F.3d 858 (Fed. Cir. 2020) ..................................................................... 16

*Interactive Gift Exp., Inc. v. Compuserve Inc.,*
256 F.3d 1323 (Fed. Cir. 2001) ................................................................ 22, 23

*L.E.A. Dynatech, Inc. v. Allina,*
49 F.3d 1527 (Fed. Cir. 1995) ................................................................... 23

*Matsushita Elec. Indus. Co. v. United States,*
750 F.2d 927 (Fed. Cir. 1984) .................................................................. 16

*Nan Ya Plastics Corp. v. United States,*
810 F.3d 1333 (Fed. Cir. 2016) ............................................................. 28, 29

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.,*
35 F.4th 1367 (Fed. Cir. 2022) ................................................................. 21

*PrimeSource Bldg. Prods., Inc. v. United States,*
111 F.4th 1320 (Fed. Cir. 2024) ...................................................... *passim*

*Purgess v. Sharrock,*
33 F.3d 134 (2d Cir. 1994) ....................................................................... 18

*Qingdao Sea-Line Trading Co., Ltd. v. United States,*
766 F.3d 1378 (Fed. Cir. 2014) ................................................................ 29

*Schwendimann v. Neenah, Inc.,*
82 F.4th 1371 (Fed. Cir. 2023) ............................................................. 17, 21

*Sigma Corp. v. United States,*
117 F.3d 1401 (Fed. Cir. 1997) ................................................................. 4

*Singleton v. Wulff,*
428 U.S. 106 (1976) ................................................................................. 17

*SNR Roulements v. United States,*
402 F.3d 1358 (Fed. Cir. 2005) ................................................................ 15

*Solianus, Inc. v. United States,*
391 F. Supp. 3d 1340 (Ct. Int'l Trade 2019) .......................................... 26

*United States v. Dowdell,*
70 F.4th 134 (3d Cir. 2023) ...................................................................... 17

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2009) ................................................................ 16

*United States v. Olano*,
    507 U.S. 725 (1993) ....................................................... 17, 20, 21

*Universal Camera Corp. v. NLRB*,
    340 U.S. 474 (1951) ................................................................ 16

*Wisconsin Alumni Rsch. Found. v. Apple Inc.*,
    112 F.4th 1364 (Fed. Cir. 2024) ............................................... 20

*Wood v. Milyard*,
    566 U.S. 463 (2012) ....................................................... 17, 18, 19

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
    716 F.3d 1370 (Fed. Cir. 2013) ......................................... *passim*

## Statutes

19 U.S.C. § 1516a(b) ....................................................................... 16

19 U.S.C. § 1673 ............................................................................... 3

19 U.S.C. § 1673d(c) ............................................................... *passim*

19 U.S.C. § 1673e(a) .......................................................................... 3

19 U.S.C. § 1675(a) ............................................................................ 3

19 U.S.C. § 1677e(a) .......................................................................... 6

19 U.S.C. § 1677e(b) ..................................................................... 6, 28

19 U.S.C. § 1677f-1(c) ....................................................................... 3

19 U.S.C. § 3512(d) ............................................................................ 5

28 U.S.C. § 1295(a) ................................................................................................ 1

28 U.S.C. § 1581(c) ................................................................................................ 1

28 U.S.C. § 2107(b) ................................................................................................ 1

28 U.S.C. § 2639(a) .............................................................................................. 16

## Other Authorities

*Policy Bulletin 05.1*, available at http://enforcement.trade.gov/policy/bull05-1.pdf ...... 4

Statement of Administrative Action (SAA), H.R. Rep. No. 103-316, at 873 (1994),
    reprinted in 1994 U.S.C.A.A.N. 4040, 4201 ........................................................ *passim*

*Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China*,
    80 Fed. Reg. 4,244 (Dep't of Commerce Jan. 16, 2015) ............................................. 4

## STATEMENT OF RELATED CASES

No other appeal in or from the present civil action has previously been before this or any other appellate court. The appellee is not aware of any related cases within the meaning of Federal Circuit Rule 47.5(b).

## STATEMENT OF JURISDICTION

The United States Court of International Trade (CIT or trial court) possessed jurisdiction pursuant to 28 U.S.C. § 1581(c). The CIT entered final judgment on September 18, 2024, and Plaintiff-Appellants Wego International Floors, LLC, Galleher Corporation, Galleher, LLC (collectively "Wego and Gallaher") filed their notice of appeal on November 12, 2024. Appx615. Therefore, this appeal is timely, as it was filed within 60 days of the CIT's final judgment. *See* 28 U.S.C. §§ 1295(a)(5); 2107(b).

Although this Court cannot reach the merits of Wego and Gallaher's appeal because they have waived or forfeited the arguments they now raise, waiver and forfeiture are generally not considered issues of jurisdiction. *See, e.g., Austin v. Healey*, 5 F.3d 598, 601 (2d Cir. 1993) (the rule that a federal appellate court does not consider issues not passed upon below "is one of prudence (and does not limit our jurisdiction) . . ."). Accordingly, we do not contest this Court's jurisdiction over the appeal even though, as discussed below, we argue that this Court cannot reach the merits.

## STATEMENT OF THE ISSUES

In an antidumping duty review, the Department of Commerce (Commerce) initially calculated the separate rate dumping margin as a simple average of the mandatory respondents' dumping margins of 0 percent and 85.13 percent. After remand proceedings, Commerce recalculated the separate rate dumping margin using the expected method, or a weight-averaging by volume, of the mandatory

respondents' dumping margins. This recalculation lowered the separate rate dumping margin by nearly 11 percent from 42.57 percent to 31.63 percent. Wego and Gallaher did not submit any comments to Commerce in response to these remand results and before the CIT Wego and Gallaher filed comments requesting that the remand results be sustained. The issues in this case are:

1. Whether Wego and Gallaher have waived the arguments in this appeal where they argue, contrary to their representations before the CIT, that the remand results should not be sustained.

2. Whether in failing to challenge the newly calculated 31.63 percent dumping margin, either before Commerce or the CIT, Wego and Gallaher have forfeited the arguments they now raise challenging Commerce's separate rate calculation.

3. Whether Commerce acted in accordance with law and with substantial evidence when it applied the "expected method" to calculate a 31.63 separate rate dumping margin.

## STATEMENT OF THE CASE

## I.     Statutory Background

The antidumping duty statute provides for the imposition of remedial duties on foreign merchandise when Commerce finds that the merchandise has been sold, or is likely to be sold, in the United States "at less than its fair value," and the U.S.

International Trade Commission (ITC) finds that an industry in the United States is materially injured, or threatened with material injury, by reason of such merchandise. 19 U.S.C. § 1673. At the conclusion of an antidumping duty investigation, if Commerce and the ITC have made the requisite affirmative findings, Commerce publishes an order that will result in the eventual assessment of duties on imports of goods covered by the investigation. 19 U.S.C. § 1673e(a).

If requested, on a yearly basis Commerce conducts an administrative review of an antidumping duty order and calculates a new dumping duty. 19 U.S.C. § 1675(a)(1)(B). Commerce reviews and determines the amount of antidumping duties for each administrative review by determining: (1) the normal value and export price (or constructed export price) of each entry of the subject merchandise, and (2) the dumping margin for each such entry. *Id.* § 1675(a)(1)-(2).

If a large number of exporters or producers involved in an administrative review makes it impracticable for Commerce to examine each individually, the agency may limit its examination to (1) a statistically valid sample or (2) exporters and producers accounting for the largest volume of subject merchandise from the exporting country that can be reasonably examined. 19 U.S.C. § 1677f-1(c)(2). Under that scenario, Commerce determines individual margins only for the selected exporters or producers. *Id.*

In proceedings involving products from a non-market economy country, the statute is silent as to how Commerce establishes a rate for nonselected respondents

who establish their independence from the government (*i.e.*, the separate rate). *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1374 (Fed. Cir. 2013).[1] In filling this gap, Commerce generally follows the statutory method for determining the rate to assign to respondents not selected for individual examination in market economy investigations (*i.e.*, the all-others rate). *See id.*; *see also, e.g., Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China*, 80 Fed. Reg. 4,244, 4,245 (Dep't of Commerce Jan. 16, 2015) (final results of antidumping duty administrative review and final results of the new shipper review).

For market economy investigations, the statute directs Commerce to establish the all-others rate by averaging the margins calculated for exporters and producers individually investigated, excluding any margins that are zero, *de minimis*, or based entirely upon facts available. 19 U.S.C. § 1673d(c)(5)(A). If all margins are zero, *de minimis*, or based entirely upon facts available, the default or "expected method . . . will be to weight-average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available." *See* The Statement of Administrative Action (SAA), H.R. Rep. No. 103-316, at 873 (1994),

---

[1] In non-market economy proceedings, Commerce presumes that all exporters and producers are controlled by the non-market economy government, unless the exporter or producer demonstrates its independence. *See Policy Bulletin 05.1*, available at http://enforcement.trade.gov/policy/bull05-1.pdf; *Sigma Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997). If a respondent does not demonstrate its independence, it receives the country-wide entity rate. *See Policy Bulletin 05.1*.

reprinted in 1994 U.S.C.A.A.N. 4040, 4201;[2] *see also* 19 U.S.C. § 1673d(c)(5)(B) (identifying averaging margins that are zero, *de minimis*, or based entirely upon facts available as a "reasonable method" for establishing a separate rate if the mandatory respondents all received dumping margins fitting one of those three categories). The SAA permits Commerce to use another "reasonable method" to determine the separate rate, but only if the expected method "is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers . . ." *See* SAA at 872-873.

## II.     Commerce's Administrative Review

In February 2018, Commerce initiated the sixth administrative review of the antidumping duty order covering multilayered wood flooring from the People's Republic of China for the period of review December 1, 2016, through November 30, 2017. *See* Appx261-271. Commerce determined that it would not be practicable in light of its resources to individually examine all companies for which an administrative review was initiated. Therefore, Commerce selected Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. (Senmao) and Sino-Maple (Jiangsu) Co., Ltd. (Sino-Maple), the two largest exporters by volume of multilayered wood flooring from China, as the

---

[2] The SAA is "an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and [the Uruguay Round Agreements Act] in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

mandatory respondents for this administrative review. Appx520-521; Appx531-533.

Commerce found the application of facts available with an adverse inference (AFA) was warranted with respect to Sino-Maple pursuant to 19 U.S.C. § 1677e(a)(1) and (2)(A)-(C) and 19 U.S.C § 1677e(b). *See* Appx164-166. Commerce assigned Sino-Maple the AFA rate of 85.13% because Sino-Maple failed to act to the best of its ability in complying with Commerce's requests, failed to provide necessary information, withheld information requested by Commerce, and significantly impeded the proceeding by not reporting the nature of its relationship with a U.S. affiliate and certain sales information. Appx166.

During the administrative review, Commerce assigned Senmao a final rate of zero. Appx151.

Fifty-eight additional exporters, including Wego and Gallaher, remained subject to review as non-individually examined, separate rate respondents because they demonstrated both *de jure* and *de facto* independence from the government of China. *See* Appx29; Appx151-152; Appx178. Commerce assigned all separate-rate eligible non-mandatory respondents a rate of 42.57 percent, a simple average of the rates assigned to the mandatory respondents. *Id.* Commerce explained that it took a simple average, as opposed to weight averaging these rates by Senmao and Sino-Maple's respective volume of imports, because full volume data for Sino-Maple was unavailable. Appx178 n.121.

### III. Proceedings Before the CIT And Remand Proceedings Before Commerce

Following Commerce's publication of its final results, numerous plaintiffs filed a total of 12 motions for judgment on the agency record (MJARs). Appx72. The motions challenged various determinations made by Commerce, including Commerce's decision to apply AFA to Sino-Maple, Commerce's method of calculating the AFA rate for Sino-Maple, Commerce's method for calculating a separate rate, and Commerce's decision to deny certain respondents eligibility to receive a separate rate. *See* Appx70-118 (*Fusong I*).

In a December 22, 2022 decision, the CIT sustained Commerce's decision to apply AFA in determining Sino-Maple's dumping margin as supported by substantial evidence and in accordance with law. *Id.*[3] However, the CIT found that Commerce employed a methodology in calculating Sino-Maple's AFA rate that was not authorized by law and therefore remanded to Commerce to reconsider its calculation of Sino-Maple's AFA rate. *See* Appx118.

In its December 22, 2022 decision, the CIT did not decide whether Commerce's inclusion of Sino-Maple's AFA rate in the calculation of the separate rate was supported by substantial evidence and in accordance with law, and whether

---

[3] The CIT also sustained Commerce's separate rate eligibility determinations as supported by substantial evidence and in accordance with law. Appx107-117. However, none of the entities that challenged Commerce's decision to deny them a separate rate have appealed. Accordingly, the issue of whether any importer was properly denied a separate rate is not before this Court.

Commerce's method in calculating the separate rate was reasonable, non-aberrational, and reasonably reflective of the separate rate respondents' potential dumping margin. Appx74 n.8. The CIT reasoned that it did not rule on these issues in its December 22, 2022 opinion because they "are contingent upon the outcome of Commerce's redetermination of Sino-Maple's rate on remand . . ." Appx74.

On January 23, 2023, the United States moved for reconsideration. *See* Appx610. The United States argued that the method Commerce used to calculate Sino-Maple's AFA rate was authorized by law and the Court overlooked certain relevant authorities in reaching the opposite conclusion. *See* Appx44-45.

On October 4, 2023, the CIT granted the United States' motion for reconsideration and partially vacated its December 22, 2022 opinion to the extent the CIT had previously held that Commerce unlawfully calculated Sino-Maple's AFA rate. *See* Appx44-45. Because the CIT held that the method Commerce used to calculate Sino-Maple's AFA rate during the administrative review was in accordance with law, the CIT relieved Commerce of its obligation to conduct a remand redetermination of Sino-Maple's AFA rate. *Id.* In its opinion granting the United States' motion for reconsideration, the CIT stated that a subsequent opinion deciding further issues would be forthcoming. *Id.*

On March 11, 2024, the CIT issued another opinion where it held that Commerce's use of a simple-average method for calculating the separate rate was unlawful under 19 U.S.C. § 1673d(c)(5)(B) and amounts to an unexplained departure

from prior agency practice. Appx23-42 (*Fusong II*). The CIT explained that when Commerce is unable to calculate a rate for the separate rate respondents using the general rule set out in § 1673d(c)(5)(A), the SAA's "expected method" becomes the default calculation method. Appx33. Thus, when the mandatory respondent dumping margins are zero, *de minimis*, or based entirely on facts available, Commerce is "expected to" weight average, by volume, these rates, to determine the rate for the companies who demonstrated entitlement to a separate rate. *Id.* The trial court found that in performing a simple average of Senmao's zero percent rate and Sino-Maple's AFA-based rate, Commerce did not follow the expected method. Appx35.

The CIT further reasoned that Commerce only possesses discretion to depart from the expected method if Commerce establishes with substantial evidence that calculating the separate rate using the expected method will not be "feasible or would result in an average that would not be reasonably reflective of potential dumping margins for the separate rate respondents." Appx36 (internal citation omitted). The CIT rejected Commerce's explanation that a weight-average of the mandatory respondents' margins was not feasible because Sino-Maple's volume data was not available. The CIT observed that Commerce relied on a quantity and value questionnaire in selecting the mandatory respondents and Sino-Maple timely responded with a response to the questionnaire where it listed the total quantity, in cubic meters and kilograms, and dollar value for its U.S. sales of the covered merchandise during the relevant period of review. Appx36-40. The CIT reasoned

that Commerce failed to explain why this sales and volume data was sufficient to identify Sino-Maple as a mandatory respondent, but not "feasible" to determine a separate rate for the non-mandatory respondents. *Id.* The CIT therefore remanded to Commerce to further explain or reconsider its calculation of the separate rate. Appx41-42.

The CIT again reserved deciding whether Commerce's use of Sino-Maple's AFA margin in its separate rate calculation resulted in a rate that was aberrational and not reflective of the Separate Rate Companies' potential dumping margins because the answer to this question was dependent on the results of Commerce's remand determination. Appx40-41. In its remand order, the CIT stated that "any comments to the remand results shall be due thirty (30) days following the filing of the remand results; and any responses to those comments shall be due fifteen (15) days following the filing of the comments." Appx41.

On May 7, 2024, Commerce released draft results of its remand redetermination to interested parties and provided them with an opportunity to comment. Appx18. In its draft remand results, Commerce used Sino-Maple's value information from the questionnaire to calculate the weighted average rate, in accordance with Commerce's current practice and the CIT's discussion in its March 2024 opinion. Appx19-20. Based on this data, Commerce determined that the weighted-average dumping margin was 31.63 percent for the non-individually examined companies eligible for a separate rate for the period December 1, 2016,

through November 30, 2017. *Id.* This 31.63 percent rate was nearly 11 percent lower than the previous rate Commerce calculated. Because no party commented on the draft results of redetermination, Commerce adopted the draft results as its final redetermination results. Appx20.

Two comments on Commerce's remand were filed in the CIT. The first comment was submitted by several plaintiff-intervenors[4] who stated that they "generally agree with Defendant's Final Remand Results with respect to the method of calculating the separate rate . . ." Appx563. However, plaintiff-intervenors did not advance any argument or comment on the new 31.63 percent rate Commerce calculated, and instead decided to "support and incorporate by reference any arguments by the plaintiffs." Appx563.

The second comment was submitted on behalf of nine consolidated plaintiffs, of which three are the current Plaintiff-Appellants.[5] This comment stated that they "generally agree that the Defendant's final remand results complied with the Court's instructions by using the weighted average, rather than a simple average, of the two individually examined mandatory respondents['] . . . antidumping duty margins to

---

[4] These plaintiff-intervenors have not appealed the CIT's judgment.

[5] This comment was filed on behalf of "Cohesion Trading Limited, Galleher Corporation, Galleher, LLC, MGI International, Metropolitan Hardwood Floors, Inc., Mobetta Trading Limited, Nakahiro Jyou Sei Furniture (Dalian) Co., Ltd., Shenyang Haobainian Wooden Co. Ltd., Wego International Floors LLC." Appx567. Of these nine consolidated-plaintiffs, three, Galleher Corporation, Galleher, LLC, and Wego International Floors LLC" are the Plaintiff-Appellants in this action.

calculate the separate rate for the non-individually examined companies." Appx568. The consolidated plaintiffs did not comment on or make any arguments with respect to the new 31.63 percent rate Commerce calculated. Instead, Wego and Gallaher stated "that Plaintiffs are in the best position to assess the lawfulness of the rates calculated for the individually examined mandatory respondents and the data relied on by the Defendant in reaching the *Final Remand Results* . . . [t]herefore, Consolidated Plaintiffs support and incorporate by reference any arguments by the Plaintiffs, as the individual rate for the mandatory respondents impacts the separate rate calculation." Appx568. The Consolidated Plaintiffs concluded their comment by "respectfully request[ing] that the Court uphold the Defendant's decision in the *Final Remand Results*." Appx568.

On July 23, 2024, the United States filed a response to the two comments filed in the CIT. Appx569. The United States argued that on remand, Commerce complied with the Court's decision "by recalculating the dumping margin in line with the statute and the expected method discussed in the [SAA]." Appx571. The United States further argued that because of the remand determination's compliance with the trial court's order, the fact that no parties commented on Commerce's draft redetermination results, and because "no party challenges Commerce's remand redetermination," the CIT should "sustain Commerce's remand redetermination and enter judgment in favor of the United States." Appx572. Plaintiffs never submitted comments on Commerce's remand redetermination nor did they submit a response to

12

the comments filed by plaintiff-intervenors and consolidated-plaintiffs.

On September 18, 2024, the CIT sustained Commerce's remand results and entered judgment for the United States. Appx5-13 (*Fusong III*). The CIT explained that Commerce "redetermined the separate rate in accordance with the statute and the SAA by using the expected method and relying on the volume evidence on the record to support its calculation." Appx11. The trial court further noted that in the remand proceedings, Commerce calculated a separate rate of 31.63 percent, which "was several percentage points lower than the 42.57 percent rate originally calculated for the Separate Rate Companies." Appx11. The CIT observed that "Consolidated Plaintiffs have not objected to this revised rate either before Commerce or in comments submitted to the court" and that each of "the parties that have filed comments ask the court to sustain the Remand Results." Appx11. Because consolidated plaintiffs and plaintiff intervenors stated in their comments that they would incorporate any arguments raised by the plaintiffs, the case manager at the CIT contacted counsel for the plaintiffs, who confirmed that plaintiffs would not file any comments on the remand proceedings. Appx7 n.3. Finding that Commerce complied with the law on remand and determined a separate rate that was uncontested, the CIT entered judgment. Appx2-3.

On November 12, 2024, Consolidated Plaintiffs Wego International Floors

LLC, Galleher Corp., and Galleher, LLC filed a notice of appeal in the CIT.[6]

Appx615.

## SUMMARY OF ARGUMENT

The trial court correctly sustained Commerce's remand results because
Commerce followed the law and its findings were supported by substantial evidence.
Wego and Gallaher's belated challenge to the trial court's decision fails for several
reasons.

First, Wego and Gallaher have waived any challenge to Commerce's
redetermination of a separate rate on remand. Wego and Gallaher filed a comment in
the CIT "respectfully request[ing] that the Court uphold the Defendant's decision in
the *Final Remand Results.*" Therefore, Wego and Gallaher have waived the arguments
they make in this appeal where they state that this Court should disturb Commerce's
*Final Remand Results.*

Second, to the extent Wego and Gallaher have not waived the arguments they
now raise in this Court, they have forfeited those arguments. In failing to argue, both
before Commerce and the CIT, that the 31.63 percent dumping margin Commerce
calculated was unsatisfactory, Wego and Gallaher have failed to preserve that issue for
appeal. No exceptional circumstances exist that warrant this Court departing from

---

[6] Consolidated Plaintiffs Struxtur, Inc. and Evolutions Flooring, Inc. also filed a
notice of appeal, which was docketed as Fed. Cir. No. 2025-1232. However, Struxtur,
Inc. and Evolutions Flooring, Inc. filed a notice voluntarily dismissing their appeal.
*See* Appx616.

the general rule that it does not consider forfeited arguments.

Third, to the extent the Court reaches the merits of Wego and Gallaher's appeal, the Court should reject Wego and Gallaher's argument that Commerce erred by calculating a separate rate using the expected method because one of the inputs to the expected method calculation is an AFA rate. Binding precedent makes clear that the expected method of weight-averaging the dumping margins of the two mandatory respondents is the preferred method of calculating a separate rate. This holds true even if the dumping margins of the mandatory respondents are all zero or based on AFA. Commerce did not act contrary to law in applying this "expected" method.

Finally, the separate rate Commerce calculated was not aberrational. Wego and Gallaher's argument that separate rates in past reviews must control the separate rate calculated in this review is unavailing. Wego and Gallaher also do not show that the 31.63 percent separate rate calculated in the sixth administrative review is unconscionably high or otherwise unlawful.

## ARGUMENT

### I. Standard of Review

This Court applies the same standard of review as was applied by the Court of International Trade, without deference. *Dupont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005); *SNR Roulements v. United States*, 402 F.3d 1358, 1361 (Fed. Cir. 2005). Accordingly, the Court will uphold Commerce's determination unless it is "unsupported by substantial evidence . . . or otherwise not in accordance

with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Dupont Teijin*, 407 F.3d at 1215. Substantial

evidence means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477

(1951); *accord Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir.

1984).

The possibility of drawing two inconsistent conclusions from the evidence in

the record does not preclude Commerce's determination from being supported by

substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). A

determination by Commerce "is presumed to be correct," 28 U.S.C. § 2639(a)(1), and

"[t]he specific factual findings on which [Commerce] relies . . . are conclusive unless

unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316

n.6 (2009).

## II. Wego and Gallaher Have Waived And Forfeited Any Challenge To The 31.63 Percent Separate Rate Commerce Calculated On Remand

### A. Wego and Gallaher Have Waived The Arguments They Raise In This Appeal

To begin, Wego and Gallaher have waived any challenge to the 31.63 percent

separate rate Commerce calculated on remand. Accordingly, the Court cannot reach

the merits of Wego and Gallaher's appeal and must affirm the decision of the CIT.

Although some cases have conflated the concepts of "waiver" and "forfeiture,"

*see In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020), they are distinct

concepts. Waiver is the "intentional relinquishment or abandonment of a known right" whereas forfeiture is "the failure to make the timely assertion of a right." *See United States v. Olano*, 507 U.S. 725, 733 (1993). And the distinction between waiver and forfeiture 'can carry great significance.'" *See United States v. Dowdell*, 70 F.4th 134, 140 (3d Cir. 2023) (internal citation omitted). Specifically, a court abuses its discretion if it considers waived arguments. *See id.*; *Wood v. Milyard*, 566 U.S. 463, 472–73 (2012) ("It would be an abuse of discretion, we observed, for a court to override a State's deliberate waiver of a limitations defense.") (internal quotation marks omitted) *accord Dixon v. McDonald*, 815 F.3d 799, 804 (Fed. Cir. 2016). However, a court possesses discretion to consider forfeited arguments, but only in "exceptional circumstances." *See Schwendimann v. Neenah, Inc.*, 82 F.4th 1371, 1380 (Fed. Cir. 2023); *Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971, 974 (Fed. Cir. 2020).

In other words, a finding that a party has waived an argument ends the matter and the Court cannot consider the merits of the argument. However, if this Court finds that a party has forfeited an argument, the Court ordinarily will not consider it. But if extraordinary circumstances are present that warrant deviating from the "general rule" that "'a federal appellate court does not consider an issue not passed upon below,'" the Court, in its discretion, may decide to consider a forfeited argument. *See Bozeman*, 955 F.3d at 974 (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)).

Here, Wego and Gallaher have waived each of the arguments they now raise on

appeal and this Court cannot consider them.  In this appeal, Wego and Gallaher challenge: (1) Commerce's decision to determine a separate rate that included the AFA rate of Sino-Maple as one of the inputs to the separate rate calculation, *see* App. Br. at 12-18, and (2) the 31.63 percent separate rate as an aberrational figure, given historical dumping margins, *see* App. Br. at 18-27.  However, before the trial court, Wego and Gallaher "request[ed] that the Court <u>uphold</u> the Defendant's decision in the *Final Remand Results*."  Appx568 (emphasis added, italics in original).  In light of this specific concession in a pleading filed in the CIT, Wego and Gallaher cannot now request that this Court <u>overturn</u> "the Defendant's decision in the *Final Remand Results*."  *Id.*; *see also Wood*, 566 U.S. at 472–73; *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact.").

Wego and Gallaher also cannot escape the consequences of their concession that the CIT should uphold Commerce's remand results.  In clearly and unambiguously stating in a filing made in the CIT that Commerce's remand results were correct, Wego and Gallaher have waived any argument that what Commerce did on remand, that is, calculating a separate rate using a method that has Sino-Maple's AFA rate as an input, was incorrect.  In *Fusong II*, the CIT held that on remand Commerce was to "further expl[ain] *or* reconsid[er], [its] use of a simple-average method for determining the separate rate."  Appx28 (emphasis added); Appx41.  The CIT did not dictate that Commerce use the expected method.  Rather, the CIT held

that Commerce possessed sufficient data to use the expected method and, therefore, its previously cited reason for departing from the expected method was not supported by substantial evidence. Thus, Commerce on remand, at least in theory, could have selected a method for determining a separate rate other than the expected method, including one that had no AFA-inputs.[7] Ultimately, however, Commerce decided not to depart from the expected method in the remand proceeding.

Accordingly, Wego and Gallaher's comments stating that they support the remand results constitutes an admission that they support Commerce's decision to reject utilizing "another reasonable method" and instead utilize the "expected method," which had Sino-Maple's AFA rate as an input. As a result, Wego and Gallaher have waived their argument on appeal that the separate rate calculated in the remand results should not be sustained because Sino-Maple's AFA rate was an input into the calculation of that rate. *See Wood*, 566 U.S. at 472–73 (finding decision of the court of appeals to consider a party's deliberately waived argument was an abuse of discretion).

Wego and Gallaher have also waived any argument that the 31.63 percent separate rate Commerce calculated was aberrational or otherwise too high. In

---

[7] It seems doubtful that Commerce, at least in this administrative review, would have been able to depart from the expected method and offer an explanation sufficient to survive judicial scrutiny. But assuming it could offer an explanation that could survive judicial review, a decision to not follow the expected method would not have violated the CIT's remand order in *Fusong II*. Appx41.

addition to urging that the remand results should be upheld, in their comments filed in the CIT, Wego and Gallaher represented that "Plaintiffs are in the best position to assess the lawfulness of the rates calculated . . . Therefore, Consolidated Plaintiffs [*i.e.*, Wego and Gallaher] support and incorporate by reference any arguments by the Plaintiffs . . ." Appx568. Wego and Gallaher themselves did not offer any affirmative argument on "the lawfulness of the rates calculated" on remand except to say that they defer to Plaintiffs. In explicitly and deliberately deferring to Plaintiffs, Wego and Gallaher bore the risk of assuming whatever decision plaintiffs decided to make in how they would respond to Commerce and the CIT. This includes the risk that Plaintiffs would affirmatively state that the separate rate Commerce calculated on remand was completely correct in all respects, or, as happened here, the risk that Plaintiffs would fail to submit any comments or responses whatsoever to both Commerce and the CIT, even after having four opportunities to do so.[8] In choosing to take this approach, Wego and Gallaher deliberately abandoned a challenge to the 31.63 percent separate rate Commerce calculated. *Olano*, 507 U.S. at 733 ("Waiver is the intentional relinquishment or abandonment of a known right.") *accord Wisconsin Alumni Rsch. Found. v. Apple Inc.*, 112 F.4th 1364, 1375–76 (Fed. Cir. 2024).

---

[8] Plaintiffs had opportunities to: (1) comment on the draft results before Commerce, (2) file comments with the CIT, (3) file a response to the comments with CIT, and (4) engage with the case manager who reached out to Plaintiffs asking if they intended to comment despite the fact that they missed two deadlines.

## B.    Wego and Gallaher Have Forfeited The Arguments They Raise In This Appeal

To the extent Wego and Gallaher have not waived the arguments they raise in this appeal, they have forfeited them.  And no "exceptional circumstances" exist that warrant this Court exercising its discretion to depart from the general rule that this Court will not consider forfeited arguments.  *See Schwendimann*, 82 F.4th at 1380; *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1380 (Fed. Cir. 2022).

Forfeiture is "the failure to make the timely assertion of a right."  *See Olano*, 507 U.S. at 733.  The time for Wego and Gallaher to assert the challenges they now raise in this Court was when Commerce invited comments to its draft remand results and in the comments Wego and Gallaher filed before the trial court.  *See* Appx41 (ordering parties to file comments on the remand results within 30 days of remand results).  Because Wego and Gallaher did not assert their current challenges at those times, they failed to preserve the arguments they now raise on appeal.

Wego and Gallaher's arguments made in the MJAR they filed in the CIT cannot serve as a basis for the appeal they now pursue.  This is because the separate rate they challenged in their MJAR is different from the separate rate they now challenge in this appeal.  In their MJAR, the Wego and Gallaher challenged a separate rate that was 42.57 percent and was based on a simple average of the two mandatory respondents' dumping margins.  However, before this Court, Wego and Gallaher challenge a separate rate of 31.63 percent, which was determined using the expected

method of weight-averaging the dumping margins of the two mandatory respondents. Therefore, the challenges to the 31.63 percent separate rate Wego and Gallaher now raise before this Court were "not passed upon below" and are forfeited. *See Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1344 (Fed. Cir. 2001); *see also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) (arguments presented to a trial court in a "skeletal or undeveloped" fashion are also forfeited).

Indeed, the separate rate that is the subject of this appeal is "several percentage points" lower than the 42.57 percent rate that Wego and Gallaher argued was too high in their MJAR. *See* Appx11. Had Wego and Gallaher wished to preserve a challenge to the 31.63 percent rate, they should have submitted comments to Commerce challenging the rate. And if Commerce did not agree, Wego and Gallaher could have noted their disagreement with Commerce's remand results in comments filed with the CIT. Without any parties arguing, either before Commerce or the CIT, that the new 31.63 percent rate was still too high, neither Commerce nor the CIT had any reason to think a live controversy remained following the remand. And more fatally, not only did Wego and Gallaher fail to speak up, they affirmatively consented to the remand results. *See* pp. 16-20, *infra*. (arguing that Wego and Gallaher deliberately waived the arguments they now raise).

### C. This Court Should Not Exercise Its Discretion To Consider Wego and Gallaher's Forfeited Arguments

No exceptional circumstances exist that warrant this Court's consideration of

Wego and Gallaher's forfeited arguments. "An appellate court will consider an issue not presented below only if: (i) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (ii) the proper resolution is beyond any doubt; (iii) the appellant had no opportunity to raise the objection at the district court level; (iv) the issue presents 'significant questions of general impact or of great public concern[;]' or (v) the interest of substantial justice is at stake." *See L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1531 (Fed. Cir. 1995); *see also Interactive Gift Exp.*, 256 F.3d at 1344–45 (compiling cases). The five concerns discussed in *L.E.A.* are reasons that allow, but do not necessarily require, this Court to consider a waived argument. *See Cemex, S.A. v. United States,* 133 F.3d 897, 902 (Fed. Cir. 1998). None of these concerns outlined in *L.E.A.* are implicated here.

A failure to consider this appeal would not "result in a miscarriage of justice" or be in "the interest of substantial justice." *See L.E.A.*, 49 F.3d at 1531. Wego and Gallaher were provided multiple opportunities to challenge the separate rate determined during remand before both Commerce and the CIT. Wego and Gallaher were thus not deprived of an opportunity to be heard and their failure to challenge the 31.63 percent rate below should not be excused by this Court. Further, this appeal does not present a "question[] of general impact." *Id.* It concerns a specific separate rate calculated for particular importers of multilayered wood flooring from China during a specific period of review. This Court will therefore not pass on deciding a truly exceptional matter if it decides to enforce the general rule that this Court does

not consider forfeited arguments.  And the just result is to enforce the general rule of forfeiture, not to excuse an unwarranted failure by Wego and Gallaher to raise any disagreement with the 31.63 percent separate rate before Commerce or the CIT.

## III.    Commerce's Calculation Of The Separate Rate On Remand Is Supported By Substantial Evidence And In Conformity With Law

To the extent that this Court finds that Wego and Gallaher have not waived or forfeited the arguments they now raise in this appeal, this Court should nonetheless affirm the trial court's judgment because the 31.63 percent separate rate is lawful and supported by substantial evidence.

### A.    Commerce Acted In Accordance With Law And With Substantial Evidence When It Calculated A Separate Rate Using Sino-Maple's Dumping Margin As An Input Pursuant To The Expected Method

Commerce's inclusion of Sino-Maple's dumping margin as an input into the separate rate calculation is consistent with 19 U.S.C. § 1673d(c)(5)(B) and the SAA. Congress contemplated that, in antidumping investigations in which some companies receive an "all others" margin, if the only margins available for Commerce to consider are *de minimis* margins and margins derived from facts otherwise available, the "expected method" would be to calculate an average margin using these rates.  *See* SAA at 872-73.  Thus, the statute not only permits the calculation of the "all others" rate using an AFA rate in circumstances such as this, but explicitly identifies this as the *expected* method.  SAA at 873, 1994 U.S.C.C.A.N. at 4201.

This Court has also confirmed that Congress "unmistakably explained" that the

expected method is the "preferred" method to follow where all calculated margins are zero, *de minimis*, or based on total AFA. *Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345, 1354 (Fed. Cir. 2016); *PrimeSource Bldg. Prods., Inc. v. United States*, 111 F.4th 1320, 1329 (Fed. Cir. 2024) ("the expected method is just that—expected— even when all mandatory respondents receive an AFA rate"); *see also Amanda Foods (Vietnam) Ltd. v. United States*, 714 F. Supp. 2d 1282, 1291 (2010). As such, Commerce may deviate from the expected method only in limited circumstances. Commerce "*may* use 'other reasonable methods,' *but only if* Commerce reasonably concludes that the expected method is 'not feasible' or 'would not be reasonably reflective of potential dumping.'" *Albemarle*, 821 F.3d at 1352 (emphasis added); *PrimeSource*, 111 F.4th at 1330 ("The burden is on Commerce to justify a departure from the expected method, not to justify its use"). Commerce therefore correctly concluded that it was reasonable and lawful to include the AFA rate to calculate the separate rate in this case.

Wego and Gallaher's reliance on *Changzhou Hawd* to assert that Commerce unlawfully inferred an adverse inference from non-cooperating companies to the cooperating separate rate companies is unavailing. *See* App. Br. at 16 (citing *Changzhou Hawd v. United States*, 848 F.3d 1006, 1012 (Fed. Cir. 2017)). In fact, *Changzhou Hawd* supports Commerce's use of the expected method in this review.

In *Changzhou Hawd*, Commerce deviated from the expected method when it included the country-wide entity's AFA rate in calculation of the separate rate, instead

of using an average of the three individually-examined respondents' *de minimis* margins. This Court held that Commerce's departure from the expected method was unlawful because, before departing from the expected method, Commerce failed to determine "that the separate-rate firms' dumping [was] different from that of the mandatory respondents." *See Changzhou Hawd*, 848 F.3d at 1012. In contrast, here, Sino-Maple was a mandatory respondent and Commerce did not deviate from the expected method.

Moreover, this Court in *Changzhou Hawd* held that "mandatory respondents . . . are assumed to be representative" of all exporters, including "separate" entities that demonstrated their independence from the Chinese government. *Id.* The Court further indicated that a separate rate may include margins determined for individually-examined firms pursuant to AFA. *Id.* at 1011 n.4; *see also Solianus, Inc. v. United States*, 391 F. Supp. 3d 1340, 1340 (Ct. Int'l Trade 2019). Thus, Commerce's inclusion of Sino-Maple's AFA rate in the separate rate calculation here was lawful.

Wego and Gallaher's reliance on *Yangzhou Bestpak* is also unavailing. 716 F.3d 1370. In *Yangzhou Bestpak*, the separate rate companies were assigned a margin of 123.83 percent based on a simple average of the two mandatory respondents. Further, one of the mandatory respondents had a 247.65 percent dumping margin, which was the China-wide rate calculated during the investigation. The Court reversed Commerce's separate rate determination, holding that the resulting separate rate margin did not "bear some relationship to their actual dumping margins." *Id.* at

1378-80.  Specifically, the Court held that "[a]ssigning a non-mandatory, separate rate respondent a margin equal to over 120% of the only fully investigated respondent with no other information is unjustifiably high and may amount to being punitive, which is not permitted by the statute." *Id.* at 1379.

These same concerns are not present here.  Unlike in *Yangzhou Bestpak*, in this case Commerce followed the "expected method" by weight-averaging the two mandatory respondents, both of whom demonstrated independence from the Chinese government.  Further, weight-averaging Senmao's zero percent rate with Sino-Maple's 85.13 percent rate resulted in a separate rate of 31.63%, which is 92 percentage points lower than, or nearly one-fourth, the separate rate in *Yangzhou Bestpak*.  Moreover, this Court in *Yangzhou Bestpak* acknowledged that both "[section] 1673d(c)(5)(B) and the SAA explicitly allow Commerce to factor both *de minimis* and AFA rates into the calculation methodology." *Id.* at 1378.  Thus, *Yangzhou Bestpak* does not stand for the proposition that use of an AFA rate in the separate rate calculation is unlawful. Rather, its holding turns on a very particular set of facts, which involved the use of a simple-average and where one of the inputs into Commerce's calculation was a 247.65 percent China-wide rate.

Further, Commerce is not required to speculate about the "economic reality" of any respondent when calculating the separate rate.  Indeed, this Court has recognized that "[w]hen Congress directs the agency to measure pricing behavior and otherwise execute its duties in a particular manner, Commerce need not examine the

economic or commercial reality of the parties specifically, or of the industry more generally, in some broader sense." *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1344 (Fed. Cir. 2016).[9]

Further, contrary to Wego and Gallaher's argument, Commerce did not *apply* AFA to Wego and Gallaher. Rather, Commerce applied facts available with an adverse inference to Sino-Maple for its failure to cooperate to the best of its ability. *See* Appx164-66. And, because the other mandatory respondent, Senmao, had a zero percent rate, Commerce employed the expected method by including Sino-Maple's AFA rate in the average to calculate the separate rate, consistent with the statute and legislative history. *See* 19 U.S.C. § 1673d(c)(5)(B); *see also* SAA at 872.

Implicit in Wego and Gallaher's argument is that, as separate rate respondents they are more like the mandatory respondent that received a zero rate, Senmao, and unlike the mandatory respondent that received an 85.13 percent AFA margin, Sino-Maple. However, the record contains no sales data for Wego and Gallaher to substantiate an argument that they are more similar to Senmao than Sino-Maple. As discussed above, "mandatory respondents . . . are assumed to be representative" of all

---

[9] The *Bestpak* opinion cites "economic reality" language. *See* 716 F.3d at 1378. However, this language comes from cases decided before the current version of the statute. Congress has since amended the statute to clarify that Commerce "is not required to determine, or make any adjustments to . . . [a] weighted average dumping margin based on any assumptions about information the interested party would have provided if the interested party had complied with the request for information." 19 U.S.C. § 1677e(b)(1)(B) .

exporters, including "separate" entities that demonstrated their independence from the Chinese government. *Changzhou Hawd*, 848 F.3d at 1012. Moreover, Commerce was not required to speculate regarding the economic reality of Wego and Gallaher in the absence of sales data. *See also Nan Ya Plastics*, 810 F.3d at 1344. And even if Wego and Gallaher are in some sense more like Senmao than Sino-Maple, Commerce cannot selectively apply its statutory obligation to apply the expected method only when both mandatory respondents receive zero or *de minimis* margins and then fail to do so when at least one of the mandatory respondents receives a rate based on facts available. *See* 19 U.S.C. § 1673d(c)(5)(B); *see also* SAA at 872; *PrimeSource*, 111 F.4th at 1329 (Fed. Cir. 2024).

### B. The 31.63 Percent Separate Rate Commerce Calculated Is Not Aberrational

Wego and Gallaher also fail to establish that the 31.63 percent separate rate Commerce calculated is unlawful because it is "aberrational." In support of this argument, Wego and Gallaher reference dumping margins calculated in prior reviews of the order. *See, e.g.*, App. Br. at 18-23. However, each "administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record." *Albemarle*, 821 F.3d at 1357 (quoting *Qingdao Sea-Line Trading Co., Ltd. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014)). Therefore, separate rates from prior reviews are not binding on the sixth administrative review.

Reliance on past margins may also be less accurate than relying on rates from

the current period.  For instance, in *Albemarle*, this Court determined that there was insufficient evidence for assigning dumping margins from prior segments of the proceeding to the separate rate respondents.  In reaching that decision, this Court considered the fact that using past margins is not the most accurate method of establishing separate rate dumping margins when Commerce is able to apply the expected method with the calculated rates of individually examined respondents in the current period of the administrative review.  *See Albemarle*, 821 F.3d at 1355-56 (discussing "the statute's manifest preference for contemporaneity in periodic administrative reviews").

Here, Commerce determined that the record did not support the parties' claims that Commerce's rate for the non-selected separate rate respondents was not reasonably reflective of potential dumping.  *See* Appx180.  Rather, there was no reasonable basis, or "substantial evidence," for concluding that the dumping behavior of the separate rate respondents was different from that of the individually examined exporters and producers to justify departing from the expected method.  *See Albemarle*, 821 F.3d at 1353.

Further, the logic underpinning the very idea of annual administrative reviews contemplates the potential for change over time in the identity of importers, the volume of imports, and in importer behavior.  Commerce need not automatically assume that the absence, or relative absence, of dumping in prior administrative reviews by certain respondents necessarily implies the absence of dumping going

forward.  *See PrimeSource*, 111 F.4th at 1334 (A separate rate "moving from 2.74% in the third administrative review to 78.17% after the fourth administrative review is not unreasonable . . . as 'there is no basis to simply assume that the underlying facts or calculated dumping margins remain the same from period to period.'" (quoting *Albemarle*, 821 F.3d at 1356)).  Thus, Commerce did not err in looking to the dumping margins of the two mandatory respondents as the best indications for the separate rate for the sixth annual review, instead of trying to anchor a separate rate based on past administrative reviews.  *See also Albemarle*, 821 F.3d at 1353 ("[t]he very fact that the statute contemplates using data from the largest volume exporters suggests an assumption that those data can be viewed as representative of all exporters.").

Indeed, Commerce in the sixth administrative review, and in prior reviews, calculated the separate rate based on the rates established for the mandatory respondents.  Wego and Gallaher have not met their burden of showing that Commerce acted irrationally by continuing to use the mandatory respondents as the inputs to the separate rate calculation, as it repeatedly has.  *See PrimeSource*, 111 F.4th at 1330 ("when Commerce applies the expected method, the party that desires Commerce to deviate from the expected method bears the burden to identify and present substantial evidence . . . [it] produced results not reasonably reflective of potential dumping margins . . .") (internal quotation marks omitted).  In this sense, Commerce has acted consistently and it is Wego and Gallaher that seek inconsistent

action by requesting that Commerce remove consideration of a mandatory respondent's dumping margin from the separate rate calculation.

*Bosun Tools Co., Ltd. v. United States* does not support departing from the expected rate. *See* App. Br. at 23 (citing 2022 WL 94172 (Fed. Cir. 2022)). In *Bosun*, this Court sustained Commerce's determination that deviation from the expected method was *not* warranted. In *PrimeSource*, this Court further clarified that "*Bosun* is a nonprecedential opinion" and "provides only an example of a party challenging Commerce's use of the expected method and failing to meet its burden to show that the results of the expected method were not reasonably reflective of its potential dumping margin." 111 F.4th at 1331.

## CONCLUSION

For these reasons, the judgment of the Court of International Trade should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
 *Assistant Attorney General*

PATRICIA M. McCARTHY
 *Director*

*Of Counsel:*

*DANIELLE COSSEY*
 *Attorney*
 *Office of the Chief Counsel for*
 *Trade Enforcement & Compliance*
 *U.S. Department of Commerce*
 *1401 Constitution Ave.*
 *Washington, DC 20230*
 *(202) 597-1029*
 *Danielle.cossey@trade.gov*

/s/ Tara K. Hogan
TARA K. HOGAN
 *Assistant Director*

/s/ Brendan D. Jordan
BRENDAN D. JORDAN
 *Trial Attorney*
 *Commercial Litigation Branch*
 *Civil Division*
 *U.S. Department of Justice*
 *P.O. Box 480, Ben Franklin Station*
 *Washington, DC 20044*
 *(202) 616-0342*
 *Brendan.D.Jordan@usdoj.gov*

June 16, 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7835 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Brendan D. Jordan*
BRENDAN D. JORDAN