# United States Court of Appeals for the Federal Circuit

**FUSONG JINLONG WOODEN GROUP CO., LTD., FUSONG QIANQIU WOODEN PRODUCT CO., LTD., DALIAN QIANQIU WOODEN PRODUCT CO., LTD., YIHUA LIFESTYLE TECHNOLOGY CO., LTD., HUZHOU CHENGHANG WOOD CO., LTD., HANGZHOU HANJE TEC CO., LTD., HUNCHUN XINGJIA WOODEN FLOORING INC., DUNHUA SHENGDA WOOD INDUSTRY CO., LTD., ZHEJIANG FUERJIA WOODEN CO., LTD., A&W (SHANGHAI) WOODS CO., LTD., DUN HUA SEN TAI WOOD CO., LTD., ZHEJIANG DADONGWU GREENHOME WOOD CO., LTD., SINO-MAPLE (JIANGSU) CO., LTD., JILIN FOREST INDUSTRY JINQIAO FLOORING GROUP CO., LTD., BAISHAN HUAFENG WOODEN PRODUCT CO., LTD., METROPOLITAN HARDWOOD FLOORS, INC., NAKAHIRO JYOU SEI FURNITURE (DALIAN) CO., LTD., SHENYANG HAOBAINIAN WOODEN CO., LTD., COHESION TRADING LTD., MGI INTERNATIONAL, MOBETTA TRADING LTD., LINYI ANYING WOOD CO., LTD., LINYI YOUYOU WOOD CO., LTD., SCHOLAR HOME (SHANGHAI) NEW MATERIAL CO., LTD., LUMBER LIQUIDATORS SERVICES, LLC, BENXI WOOD COMPANY, DALIAN JIAHONG WOOD INDUSTRY CO., LTD., DALIAN KEMIAN WOOD INDUSTRY CO., LTD., DONGTAI FUAN UNIVERSAL DYNAMICS, LLC, HAILIN LINJING WOODEN PRODUCTS CO., LTD., JIANGSU GUYU INTERNATIONAL TRADING CO., LTD., JIANGSU MINGLE FLOORING CO., LTD., JIANGSU SIMBA FLOORING CO., LTD., JIASHAN HUIJIALE DECORATION MATERIAL CO., LTD., KEMIAN WOOD INDUSTRY (KUNSHAN) CO., LTD., SUZHOU DONGDA WOOD CO., LTD., TONGXIANG JISHENG IMPORT AND EXPORT CO., LTD., BENXI WOOD, ET AL., STRUXTUR, INC., EVOLUTIONS FLOORING, INC.,**
*Plaintiffs*

**CAPTION CONTINUED ON THE NEXT PAGE**

**GALLEHER CORP., GALLEHER, LLC, WEGO INTERNATIONAL FLOORS LLC,**
*Plaintiffs-Appellants*

v.

**UNITED STATES,**
*Defendant-Appellees*

**AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING,**
*Defendant*

---

Appeal from the United States Court of International Trade in No. 1:19-cv-00144-RKE, Senior Judge Richard K. Eaton

---

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS GALLEHER CORP., GALLEHER, LLC, WEGO INTERNATIONAL FLOORS LLC.,**

LIZBETH R. LEVINSON
BRITTNEY R. POWELL
FOX ROTHSCHILD LLP
2020 K STREET, NW SUITE 500
WASHINGTON, DC 20006
PHONE: (202) 461-3100

*Counsel for Plaintiffs-Appellants Galleher LLC, Galleher Corporation, and Wego International Floors LLC*

July 30, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 25-1196

**Short Case Caption** Galleher Corp., et al. v. United States

**Filing Party/Entity** Galleher Corp., Galleher LLC, Wego International Floors, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/30/20 25

Signature: /s/ Lizbeth R. Levinson

Name: /s/ Lizbeth R. Levinson

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Galleher Corp. | | |
| Galleher LLC | | |
| Wego International Floors, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Alexander D. Keyser, Fox Rothschild LLP | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

                                                                                        **Page**

INTRODUCTION ....................................................................................................1

SUMMARY OF ARGUMENT ..............................................................................1

ARGUMENT ..........................................................................................................3

I.     Appellants Did Not Waive or Forfeit Their Challenge to the Separate
      Rate Calculated by Commerce on Remand.....................................................3

        A.    Appellants Did Not Waive the Arguments they Raise on Appeal.......9

        B.    Appellants Did Not Forfeit the Arguments they Raise on Appeal .......9

II.    Calculation of a Separate Rate Based on Sino-Maple's AFA Rate
      Remains Unreasonable ................................................................................12

Conclusion ...........................................................................................................21

**Cases**

*Albermarle Corp. v. United States*,
821 F.3d 1345 (Fed. Cir. 2016) .......................................................................... 14

*Bestpak Gifts & Crafts Co. v. United States*,
716 F.3d 1370, 1380 (Fed. Cir. May 20, 2013) ............................................... 2, 19

*Changzhou Hawd Flooring Co. v. United States*,
848 F.3d 1006 (Fed. Cir. February 15, 2017) ............................................. 16, 17

*Fresenius USA, Inc. v. Baxter International, Inc*., 582 F.3d 1288, 1296
(Fed. Cir. September 2009) .................................................................................. *4*

*Fusong Jinlong Wooden Group Co., Ltd. ET AL. v. United States*, Ct.
No. 19-00144 (Ct. Int'l Trade 2022) ........................................................... *passim*

*Nelson v. Adams USA, Inc*,
529 U.S. 460, 469-470 (April 2000) ................................................................... 9

*PrimeSource Building Products, Inc. v. United States*,
111 F.4th 1320 (Fed. Cir. August 2024) ........................................................ 14, 15

*Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v.
United States*,
268 F.3d 1376, 1382 (Fed. Cir. October 2001) ............................................... 2, 13

*Singleton v. Wulff*,
428 U.S. 106, 120 (1976) ..................................................................................... 9

*Thai Pineapple Canning Indus. Corp. v. United States*,
273 F.3d 1077 (Fed. Cir. December 2001) .................................................... 12, 19

*United States v. Olano*,
507 U.S. 725, 733 (1993) ............................................................................. 3, 5, 9

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
716 F.3d 1370 (Fed. Cir. May 20, 2013) .......................................................... 16

**Statutes**

19 U.S.C. § 1675d(c)(5)(B) ........................................................................13

**Other Authorities**

*Multilayered Wood Flooring from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2012-2013*, 80 Fed. Reg. 41,476 (July 15, 2015)..................................15

*Multilayered Wood Flooring from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2014-2015,* 82 Fed. Reg. 25,766 (June 5, 2017)....................................3

*Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Rescission; 2016-2017*, 84 Fed. Reg. 35,461 (July 26, 2018) ........................................................1

## INTRODUCTION

Wego International Floors, LLC, Galleher Corporation, Galleher, LLC (collectively "Appellants"), respectfully submit this brief in reply to the response brief filed by Defendant-Appellee, the United States. *See Response Brief of Defendant-Appellee*, June 16, 2025, ECF 30. This appeal challenges the United States Department of Commerce's ("Commerce's" or "the Department's") final results in its sixth administrative review of *Multilayered Wood Flooring from the People's Republic of China,* and its subsequent remand results before the CIT. *See Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Rescission; 2016-2017*, 84 Fed. Reg. 35,461 (July 26, 2018) and accompanying Issues and Decision Memorandum ("Final Results") Appx150-218; *see also* Final Remand Results, Appx15-21.

## SUMMARY OF ARGUMENT

Appellants showed in their initial brief that the Department of Commerce's ("Commerce's" or "the Department's") calculation methodology in its Final Remand Results for the separate rate, using the weighted average of an adverse facts available ("AFA") rate and a zero percent rate, was unreasonable and otherwise not in accordance with law. *Initial Brief*, January 31, 2023, ECF 13. In its Response Brief, the United States first claims that Appellants waived and/or forfeited their rights to make certain arguments on appeal. Yet, it is clear from this

Court's precedent and the underlying decision that Appellants did not waive their right to make certain arguments before this Court since they did not intentionally relinquish or abandon a known right. Further, Appellants did not forfeit their arguments because they made the same arguments at the proper time before the Court of International Trade. Therefore, it is proper for this Court to consider Appellants' arguments presented on appeal.

The Defendant-Appellee also attempts to undermine the substance of Appellants' arguments but fails to show why Commerce's calculation of a clearly aberrational rate was justified in the underlying remand results. Commerce is obligated under the statute to employ methodologies that calculate companies' antidumping duty margins as accurately as possible, including separate rate companies. *Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States,* 268 F.3d 1376, 1382 (Fed. Cir. October 2001). Commerce's use of Sino-Maple's AFA rate in the separate rate calculation clearly resulted in a distorted and aberrational margin that did not bear any relationship to the actual or potential dumping margins of the separate rate companies. *Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1380 (Fed. Cir. May 20, 2013) ("*Bestpak*"). Indeed, a simple analysis of historic margins for mandatory respondents and separate rate companies in the investigation and all prior administrative reviews of the *Multilayered Wood Flooring from China* antidumping orders clearly show that

the rate calculated by Commerce on remand was not consistent with historic or potential antidumping duties. *See, e.g. Multilayered Wood Flooring from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2014-2015,* 82 Fed. Reg. 25,766 (June 5, 2017).

Accordingly, this Court should reverse the judgment of the trial court's holding that Commerce's calculation of the separate rate margin was supported by substantial evidence on the record.

## ARGUMENT

### I. Appellants Did Not Waive or Forfeit their Challenges to the Separate Rate Calculated by Commerce on Remand

#### A. Appellants Did not Waive the Arguments they Raise on Appeal

Defendant-Appellee first claims that Appellants waived their challenges to the separate rate calculated by Commerce on remand. *Response Brief of Defendant-Appellee*, June 16, 2025, ECF 30 at 16-21. To waive an argument on appeal there must be an "intentional relinquishment or abandonment of a known right." *See United States v. Olano*, 507 U.S. 725, 733 (1993). Defendant-Appellee's argument thereby fails on the mere definition of waiver, as Appellants did not intentionally relinquish or abandon the arguments presented on appeal during the CIT's initial proceedings.

Throughout the underlying proceedings, Appellants and other parties raised many arguments challenging the calculation of the AFA rate for the separate rate

respondents in the *Final Results* in the 6th administrative review of *Multilayered Wood Flooring from the People's Republic of China*.  This Court has often found a party waives an argument when it "fails to raise an argument before the trial court or presents only a skeletal or undeveloped argument at the trial court."  *See, e.g., Fresenius USA, Inc. v. Baxter International, Inc*., 582 F.3d 1288, 1296 (Fed. Cir. September 2009).  This is not the case here.  From the outset, parties challenged Commerce's inclusion of Sino-Maple's AFA rate in the calculation of the separate rate and claimed that the methodology resulted in an aberrational and unreasonable separate rate margin.  *Plaintiff-Appellants' CIT Brief,* Appx126-148.  Various plaintiffs developed the argument, and cited precedent that supported the removal of Sino-Maple's AFA rate from Commerce's calculation of the separate rate.  *See, e.g.,* at Appx126-135.  That issue was never addressed or decided by the CIT.

In the CIT's second remand in this case, the Court instructed Commerce to either justify its decision to use a simple average of the mandatory respondents' margins to calculate the separate rate, or to reconsider the separate rate by using the expected method of the weighted average.  *Fusong Jinlong Wooden Group Co., Ltd. Et. Al. v. United States* ("*Fusong Jinlong II*"), Ct. No. 19-00144, Slip Op. 24-29 (Ct. Int'l Trade March 11, 2024), Appx24-42.  In that slip opinion, the CIT did not address the arguments related to including Sino-Maple's AFA margin in the calculation of the separate rate.  Appx43.  Instead, the CIT specifically reserved

opinion on whether Commerce's use of Sino-Maple's AFA margin in its separate rate calculation resulted in an aberrational rate for after the remand. *Id*. In its Remand Results, Commerce continued to use Sino-Maple's AFA margin in its separate rate calculation. Final Remand Results, Appx20-22.

Defendant-Appellee contends that Appellants waived their ability to contest the inclusion of Sino-Maple's AFA rate in the separate rate calculation because they "supported" Commerce's remand results before the CIT. It emphasizes that the CIT did not require Commerce to recalculate the separate rate on remand using a weighted average (*i.e.,* the expected method), and that by supporting Commerce's choice to do so, Appellants intentionally waived their arguments related to the inclusion of Sino-Maple's AFA rate in the calculation. *Response Brief*, ECF 30 at 18.

Appellants' Comments on Commerce's Remand Results, however, do not constitute an "intentional relinquishment or abandonment" of its arguments. *United States v. Olano*, 507 U.S. 725, 733 (1993). Appellants never stated in their comments on the remand results that they agreed with the use of the expected method or the use of Sino-Maple's AFA rate in the calculation of the separate rate. Instead, Appellants generally agreed that "the Defendant's final remand results complied with the Court's instructions by using the weighted average, rather than a simple average, of the two individually examined mandatory respondents' (Jiangsu

Senmao Bamboo and Wood Industry Co., Ltd.'s and Sino-Maple's) antidumping duty margins to calculate the separate rate for the non-individually examined companies." Appx568.

It is clear from the context of the CIT's remand that Appellants did not intentionally relinquish or abandon their arguments concerning the inclusion of Sino-Maple's AFA rate in the calculation of the separate rate. The CIT's remand was based on Commerce's departure from the expected method by using a simple average rather than a weighted average to calculate the separate rate. Appx24-42. Appellants never stated in their comments that they supported Commerce's use of Sino-Maple's AFA margin to calculate the separate rate or that the expected method was appropriate in this case. Rather, Appellants merely noted that Commerce followed the CIT's instructions, and that the weighted average was clearly the lawful methodology compared to the simple average previously used by Commerce. Appx568.

Appellants' acknowledgement that Commerce was correct to use a weighted average over a simple average does not mean that it supported Commerce's unlawful use of a distortive AFA rate to calculate the separate rate. Appellants made it clear throughout the underlying proceedings that they believed the inclusion of Sino-Maple's AFA rate in the calculation of the separate rate was not in accordance with law. *Appellants' Motion for Judgment on the Agency Record*,

Appx126-130.  Further, the CIT noted in *Fusong Jinlong II* that it would decide whether the use of Sino-Maple's AFA rate in the calculation of the separate rate was lawful following remand.  Appx41-42.  Therefore, when Appellants urged the CIT to uphold Commerce's *Final Remand Results*, they had every reason to believe that the CIT was still going to consider Commerce's incorrect use of Sino-Maple's AFA rate in the separate rate calculation.  Instead of having their arguments considered by the CIT, however, Appellants were blindsided when the CIT issued its final decision that found the issue to be "moot."  CIT's Final Opinion, Appx9.

To further support its claims, Defendant-Appellee contends that Appellants waived arguments before this Court because they stated in their remand comments that "Plaintiffs are in the best position to assess the lawfulness of the rates calculated." *Response Brief*, ECF 30 at 20.  Appx568.  Once again, Defendant-Appellee selectively included phrases from Appellants' comments on remand, to support their arguments, but once again these comments considered in their entirety fail to constitute an intentional relinquishment or abandonment of an argument as required for a waiver.

Appellants did state that Plaintiffs were in the best position to assess the lawfulness of the rates calculated for the *mandatory respondents*, but made no mention of the separate rate.  Appx568.  Appellants only incorporated arguments

made by Plaintiffs into their comments on the remand results because any arguments Plaintiffs may have made concerning the "individual rate for mandatory respondents impacts the separate rate calculation." Appx568. No relinquishment of Appellants' previous arguments can be found in the incorporation by reference, and there is certainly no indication that Appellants were relying on Plaintiffs to remind the CIT of pending arguments before it. Appellants were not putting their case entirely in the hands of Plaintiffs, with all the consequences therein. Rather, Appellants were attempting to safeguard their rights in the event that Plaintiffs submitted arguments related to the mandatory respondents' margins. Appellants had no reason to suspect that the CIT was going to circumvent a decision on the use of Sino-Maple's AFA rate and find the argument moot when that argument was not discussed or considered on remand.

Ultimately, Appellants did not fail to present their arguments before the CIT, and provided more than ample support for those arguments. Despite Defendant-Appellee's piecemeal reading of Appellants' comments on the remand results, Appellants never made any statement in those comments which intentionally relinquished their arguments. Therefore, Appellants did not waive their arguments concerning the use of Sino-Maple's AFA margin to calculate the separate rate and the resulting aberrational rate of 31.63 percent.

**B. Appellants Did Not Forfeit the Arguments they Raise on Appeal**

As an alternative to its arguments concerning waiver, Defendant-Appellee contends that Appellants forfeited their arguments before this Court by failing to present those arguments to Commerce during the remand proceedings. *Response Brief*, ECF 30 at 21. Generally, a federal appellate Court does not consider issues that were not raised before the lower tribunal. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Specifically, court's will consider an argument forfeited when a party fails to make "the timely assertion of a right." *See Olano*, 507 U.S. at 733. Defendant-Appellee contends that the proper time for Appellants to present their current arguments was during Commerce's remand proceedings, and that Appellants' failure to present their arguments at that time constituted a forfeiture of those arguments. *Id.* at 21-22. Yet, the record clearly shows that Appellants timely asserted their arguments related to the use of Sino-Maple's AFA margin in the calculation of the separate rate and put both the CIT and Commerce on notice of those arguments.

Preserving an argument for appeal does not "demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469-470 (April 2000). Both the CIT and Commerce were put on notice as to the substance

of the issues that Appellants now raise before this Court from the beginning of this case. In the underlying proceedings before the CIT, Appellants and other parties raised arguments regarding the inclusion of Sino-Maple's AFA margin in the calculation of the separate rate in their initial motion for judgment on the agency record. Appx 135-145. In that motion, Appellants made many of the substantive arguments they now make before this Court, including arguments relating to the distortive nature of Sino-Maple's AFA margin, potential dumping margins, and historic margins in the *Multilayered Wood Flooring from China* case. *Id*. Despite Defendant-Appellee's claims, Appellants' arguments were far from "skeletal or undeveloped" as they were supported with facts on the record and legal precedent. Therefore, both the CIT and Commerce were on notice that Appellants contested the use of Sino-Maple's AFA rate in the calculation of the separate rate at the time of the remand proceedings and when the CIT issued its final decision.

When Appellants presented their arguments in their initial motion for judgment on the agency record, they did so at the proper time and venue. Nothing in Commerce's remand proceedings, the CIT's slip opinion, or the statute suggested that Appellants were required to repeat their previous arguments in order to preserve the issue, especially where the Court noted it was reserving judgment on that issue for a later date. Appx41. The CIT's reservation of judgment clearly indicated that the proper time and venue for Appellants' arguments concerning the

inclusion of Sino-Maple's AFA rate in the calculation of the separate rate had already occurred. Appx41. Further, the CIT's decision to reserve judgment suggested that the proper time for Appellants to make such arguments was not during the remand proceedings. *Id.*

Commerce's draft remand results and final remand results also did not indicate that the remand proceedings were the proper venue for arguments related to the inclusion of Sino-Maple's AFA margin in the separate rate calculation. Appx15-20, Appx618-625. Commerce was well aware that one of the major issues still before the Court was its use of Sino-Maple's AFA margin in the calculation of the separate rate. If Commerce truly believed that its remand proceedings were the proper venue for arguments relating to Sino-Maple's inclusion in the separate rate calculation, it likely would have included some discussion of this issue in its draft remand results to protect its decision from further contestation. Despite its prior notice of Appellants' arguments, however, Commerce provided no evidence to support its continued inclusion of Sino-Maple's AFA margin in the calculation and made no mention of how its change in methodology cured the new margin of Sino-Maple's distortive effects. Appx15-20, Appx618-625. Commerce's lack of any comments regarding this issue during the remand proceedings suggest it did not believe those proceedings were the correct venue for addressing those arguments.

Defendant-Appellee further suggests in its response brief that Appellants should have raised their arguments during the remand proceedings because the separate rate calculated on remand, and disputed in this appeal, is not the same rate contested in Appellants' initial motion for judgment on the agency record. *Response Brief*, ECF 30 at 22. Commerce's change in its calculation methodology, however, did not have any effect on Appellants' substantive arguments related to the separate rate. Appellants argued before the CIT that the inclusion of Sino-Maple's AFA rate as part of an average to calculate the separate rate was unreasonable. *See* Appx135-145. Appellants' arguments did not care how Commerce used Sino-Maple's AFA rate to calculate the margin, but instead contested any use of Sino-Maple's rate in the calculation of the separate rate as distortive. *Id*. Commerce was on notice of the substance of Appellants' arguments throughout its remand proceedings, and its changes to the calculation methodology clearly did not answer the issues raised by Appellants in their motion before the CIT.

## II. Calculation of a Separate Rate Based on Sino-Maple's AFA Rate Remains Unreasonable

As explained in Appellants' opening brief, Commerce's inclusion of Sino-Maple's AFA rate in the calculation of the separate rate resulted in an aberrational separate company rate of 31.63 percents. *Initial Brief* at 12-18, Appx15-21. Defendant-Appellee contests the aberrational nature of the calculated separate rate

based on its use of the "expected method," *i.e.,* taking the weighted average of the mandatory respondents' rates to calculate the separate rate. This Court recognized in *Thai Pineapple Canning Indus. Corp. v. United States,* 273 F.3d 1077 (Fed. Cir. December 2001), however, that "while various methodologies are permitted by the statute, it is possible for the application of a particular methodology to be unreasonable in a given case." *Id.* at 1085. Thus, the use and inclusion of the expected method does not grant Commerce absolute discretion in calculating the separate company rate under 19 U.S.C. § 1675d(c)(5)(B). Rather, Commerce has an obligation to employ methodologies that calculate margins as accurately as possible. *Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States,* 268 F.3d 1376, 1382 (Fed. Cir. October 12, 2001). Here, Commerce failed to meet its statutory obligation to calculate margins as accurately as possible.

In this case, Commerce's use of the expected method to calculate the separate rate in its remand results was unreasonable because that calculation resulted in an aberrational rate that did not reflect the potential dumping margins of the separate rate companies. As demonstrated in Appellants' initial brief, the mandatory respondents and separate rate companies in almost all five of the preceding administrative reviews and the initial investigation received margins of zero percent. *Initial Brief*, ECF 13 at 18-24. Only in the sixth administrative review, under appeal in this case, did the separate rate companies actually receive a

margin greater than 4 percent. *Id*. The historic pattern in *Multilayered Wood Flooring from China* clearly indicates that the 31.63 percent separate rate was aberrational and distorted by Commerce's inclusion of Sino-Maple's AFA rate in the calculation of the separate rate.

Defendant-Appellee claims that the Court should not rely on historic data to evaluate the aberrational nature of Commerce's calculated separate rate. In making its argument, Defendant Appellee relies on this Court's decisions in *Albemarle* and *Primesource*, but neither of these cases truly refute the use of historic data as an indicator of potential dumping margins. *Albemarle Corp. & Subsidiaries v. United States,* 821 F.3d 1345 (Fed. Cir. May 2016); *see also PrimeSource Building Products, Inc. v. United States*, 111 F.4th 1320 (Fed. Cir. August 2024). In *Albemarle*, Commerce initially calculated the separate rate based on rates found in the prior administrative review. *Albemarle Corp*, 821 F.3d at 1348. The Court found that Commerce's chosen methodology was unreasonable, and that it should have instead used the expected method of calculating the weighted average of the mandatory respondents' margins. *Id*. Unlike *Albemarle*, Appellants are not urging this Court to find that Commerce should have used the margins from a prior administrative review to calculate the separate rate in its remand results. Rather, the historic dumping margins were offered to show that the 31.63 percent margin calculated by Commerce did not reflect the potential dumping margins of the

separate rate companies. Based on the historic data, separate rate companies'

potential dumping margins are likely closer to the zero percent rate calculated for

Jiangsu Senmao during the administrative review.[1] The sudden leap of the

separate rate by 31 percentage points defies nearly a decade of dumping trends in

this case, indicating that Commerce's calculated rate using the expected method

was clearly aberrational in nature.

In *PrimeSource*, the appellants also argued that historic dumping trends

indicated that the inclusion of an AFA rate in the calculation of the all-others rate

was unreasonable. *PrimeSource Building Products, Inc. v. United States*, 111 F.4th

at 1332-1334. Despite appellants' claims in that case, Commerce actually found

that the historic margins reflected AFA usage in all previous administrative

reviews. *Id*. at 1333. Indeed, Commerce noted that companies had previously

received margins identical to the AFA rate calculated in the administrative review

under appeal. *Id*. The Court found that "Commerce engaged with the evidence of

---

[1] The pattern displayed by the historic dumping margins is even more significant given that many of the separate rate companies that received the 31.63 percent margin in this proceeding specifically received lower margins, either as mandatory respondents or separate rate companies in the prior reviews. Dalian Daejin Wood Co., Ltd., for example, received a calculated margin of 0 percent in the second administrative review and 0 percent separate rate in the following administrative reviews. *See Multilayered Wood Flooring from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2012-2013*, 80 Fed. Reg. 41,476 (July 15, 2015).

record and came to the reasonable conclusion that the facts of the case did not support a departure from the expected method." *Id*.

The facts in the *Multilayered Wood Flooring* case are clearly different from the facts of PrimeSource. The historic dumping trends in this case consistently show that no mandatory respondents or separate rate companies received an AFA margin, and that the highest margin previously received was less than 4 percent. *Initial Brief*, ECF 13 at 18-25. Further, Commerce did not meaningfully engage with these facts in its underlying determination, as it somehow found that the "separate rate has in fact changed from segment to segment, and the separate rate companies have not had consistent low margins for each review," despite the multitude of evidence indicating otherwise. Final Results, Appx181-182. The holding in PrimeSource therefore should have little bearing before this Court, since the facts are highly distinguishable from the present case.

In Appellants' initial brief, we cited several cases in which this Court previously found that the inclusion of an AFA rate in the calculation of the separate rate had an unreasonably distortive impact on the separate rate companies and did not reflect potential dumping margins, including *Changzhou Hawd* and *Bestpak*. *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1374 (Fed. Cir. May 2013) ("*Bestpak*"); *Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006 (Fed. Cir. February 2017) ("*Changzhou Hawd*"). In its

Response Brief Defendant-Appellee attempts to distinguish the facts of *Bestpak* and *Changzhou Hawd* from the facts currently before the Court. Defendant-Appellee's attempts to undermine the case law fall short, however, because it refuses to recognize that both cases indicate the inclusion of an AFA margin in the calculation of the separate rate can result in an aberrational or distortive margin for fully cooperative separate rate companies.

Defendant-Appellee is correct that this Court found in *Changzhou Hawd* that Commerce should have employed the expected method to calculate the separate rate. *Changzhou Hawd*, 848 F.3d at 1011-1012. Despite this finding, the case still supports the larger principle that the inclusion of an AFA rate in a separate rate margin applicable to fully cooperative separate rate companies was an unreasonable methodology employed by Commerce. *Id*. In the underlying decision, Commerce calculated the separate rate by averaging the three *de minimis* rates assigned to the mandatory respondents with the 25.62 percent AFA rate adopted for the China-wide entity rate. *Id*. at 1009. The Court found that Commerce's rationale did not include "the needed inference" about the separate rate firms, since those companies were more "like the mandatory respondents that responded" to Commerce's questionnaires. *Id*. at 1012. The Court further noted that use of the expected method would not result in an unreasonably high average being applied to the separate rate companies because the average of the mandatory

respondents' rates was zero or *de minimis*. *Id*. at 1011 N.4. Thus, this Court ultimately found that it was unlawful for Commerce to infer any adverse inference derived from the China-wide/total AFA rate to fully cooperative separate rate companies. *Id*. at 1012.

As in *Changzhou Hawd*, Commerce's inclusion of an AFA margin in its calculation of the separate rate in this case caused the adverse inference assigned to one company to unduly influence the margin assigned to the fully cooperative separate rate companies. *Id*. Critically, the use of the expected method in this case resulted in an unreasonably high average of 31.63 percent being applied to the separate rate companies, an issue that was not present in *Changzhou Hawd*. *Id*. at 1011 N.4. As in *Changzhou Hawd,* Commerce's calculation methodology effectively extended the consequences of Sino-Maple's non-cooperation to the separate rate companies. Defendant-Appellee contends that there is nothing in the record to suggest that Appellants are more like Jiangsu Senmao than Sino-Maple.[2] *Response Brief,* ECF 30 at 28. Yet, *Changzhou Hawd* clearly demonstrates that fully cooperative separate rate companies are considered more like a fully cooperative mandatory respondent, like Jiangsu Senmao, than a mandatory

---

[2] Defendant-Appellee seemingly forgets that Appellants are not separate rate companies, but rather importers of multilayered wood flooring products from China during the period of review impacted by the separate rate. *Response Brief*, ECF 30 at 26. Of course the record lacks information on Appellants' sales data, since Appellants' information has nothing to do with export sales of subject merchandise to the United States.

respondent which received an AFA rate for failing to cooperate, like Sino-Maple. *Changzhou Hawd*, 848 F.3d at 1012.

Defendant-Appellee's assault on *Bestpak* is similarly faulty. In *Bestpak*, the Court found that Commerce's decision to use a *de minimis* dumping margin and the highest possible AFA margin to calculate the separate rate "undercut the reasonableness of the evidence relied upon to set the margin." *Bestpak*, 716 F.3d at 1380. Though Commerce did not calculate the separate rate using a weighted average under the expected method, the Court detected "no legal error in Commerce's use of a simple average rather than a weighted average," and instead emphasized that any particular methodology could be unreasonable in a given case. *Id*. at 1378 (quoting *Thai Pineapple Canning Indus. Corp. v. United States*, 273 F.3d at 1085).

Defendant-Appellee argues that the Court's holding in *Bestpak* was limited to a very particular set of facts, as the calculation methodology resulted in a rate that did not accurately reflect the potential dumping margins of separate rate companies. *Response Brief*, ECF 30 at 27. Defendant-Appellee also contends that *Bestpak* is not applicable to this case because the resulting separate rate is much lower (31.63 percent) than the rate calculated in *Bestpak* (123.83 percent). *Id*. Yet, the Court in *Bestpak* did not limit its holding to a specific set of facts, nor did it establish a threshold percentage restricting the use of an AFA margin in the

calculation of the separate rate.  *See Bestpak*, 716 F.3d at 1379-1381.  Rather, the Court found that the inclusion of an AFA rate in the calculation resulted in a separate rate that did not bear any relationship to the actual dumping margin of the separate rate companies.  *Id*. at 1380.  In this case, the inclusion of Sino-Maple's AFA margin in the calculation resulted in a separate rate that was 31 percentage points higher than the margin calculated for the only cooperative mandatory respondent, Jiangsu Senmao.  Appx15-21.  Though this margin may not have been as large as that calculated in *Bestpak*, it is significantly higher than Jiangsu Senmao's *de minimis* rate and reflects Commerce's decision to allow a punitive AFA margin to distort the rate applicable to fully cooperative separate rate companies.

Based on the relevant precedent before this Court and the historic data, it is clear that Commerce's application of the expected method and the use of Sino-Maple's AFA rate in its calculations did not reflect the separate rate companies' potential dumping margins.  Commerce's calculation methodology allowed Sino-Maple's non-cooperation to pollute the rate of otherwise cooperative separate rate companies.  Ultimately, Commerce's decision created an aberrational separate rate that failed to meet Commerce's statutory obligation to calculate antidumping duty margins as accurately as possible.

## CONCLUSION

For these reasons, we respectfully request that this Court disregard Defendant-Appellee's claims regarding waiver and forfeiture, and consider the substance of Appellants' arguments. Further, Appellants' continue to request that this Court reverse the trial court's holding that the inclusion of Sino-Maples AFA rate in the calculation of the separate rate was supported by substantial evidence on the record. We also request that this Court remand this proceeding to Commerce to calculate the separate rate based on a reasonable methodology that considers the historic dumping margins in all other proceeding segments.

/s/ *Lizbeth R. Levinson*
Lizbeth R. Levinson
Brittney R. Powell
FOX ROTHSCHILD LLP
2020 K STREET, NW
SUITE 500
WASHINGTON, DC
20006
Phone: (202) 461-3100

*Counsel for Plaintiffs-Appellants Galleher LLC, Galleher Corporation, and Wego International Floors LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  2025-1196

**Short Case Caption:**  Fusong Jinlong Wooden Group Co., Ltd. v. United States

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes _4735_ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: _07/30/2025_

Signature: _/s/ Lizbeth R. Levinson_

Name: _/s/ Lizbeth R. Levinson_

Save for Filing